### AT & T INFORMATION SYSTEMS, INC., Appellant,

v.

### GENERAL SERVICES ADMINISTRATION.

#### No. 86–5180.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 18, 1986.

Decided Feb. 13, 1987.

Thomas A. Lemmer, with whom D. Michael Fitzhugh was on the brief, Washington, D.C., for appellant.

Michael L. Martinez, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and GESELL,* District Judge.

Opinion PER CURIAM.

PER CURIAM:

Once again the Court must review a reverse-Freedom of Information Act ("FOIA") case and focus on the sufficiency of an agency's decision to release confidential commercial information over timely objection. The District Court granted summary judgment sustaining a decision of the General Services Administration ("GSA") to release to competitors of AT & T Information Systems ("AT & T–IS") under FOIA six documents containing confidential pricing information which AT & T–IS submitted to GSA as part of its response to a bid solicitation. Because the District Court departed from the administrative record by relying on post-hoc rationalizations for GSA's action submitted by affidavit, we reverse with direction to remand the record to GSA so that it may comply with the Administrative Procedure Act.

In 1983 GSA commenced a nationwide one-billion dollar program to modernize its telecommunications system by awarding regional contracts through competitive bidding. On March 1, 1985, AT & T–IS was selected as the successful bidder for the

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

New England region, in the first procurement initiated under this plan. The procurement included station equipment, switches, and a switch management center, as well as various services, plus installation and maintenance. Electronic switches using computer software regulating the flow of telephone messages and computer data among some 29 locations in the region were involved. Each bidder was required to develop its own switching configuration. The number and size of the switches selected by a bidder to create an adequate, balanced system was doubly crucial because this in turn had a direct bearing on the ultimate bid price.

Three days after the bid award to AT & T–IS, GTE Communications Systems ("GTE"), a competitor of AT & T–IS also involved in the New England procurement, filed under FOIA asking for AT & T–IS's entire proposal. On March 6, 1985, a GSA official notified AT & T–IS of GTE's filing, stating:

> I hereby request your comments on the releasability of your proposal, including the pricing section. What areas, if any, should be withheld? If you feel that any areas should not be released to GTE, explain why the release of such information would cause substantial competitive harm to your firm.

Joint Appendix ("J.A.") at 139. Addressing FOIA exemption 4, 5 U.S.C. § 552(b)(4) (1982),[1] AT & T–IS presented in response a specific, detailed claim stating why its switching configuration and discount pricing strategy for components underpinning the final publicly disclosed bid price should be withheld as "commercial or financial" information within the meaning of the exemption. It emphasized the prospect of further similar competitive bidding for other GSA regions and the harm to its position in the bidding that release of the detailed price data would cause.

**1.** (b) This section does not apply to matters that are—

    (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential;

AT & T–IS's submission was examined. Its objection to releasing the identity of the systems' configuration was accepted, but a decision was made within GSA to release to FOIA requesters AT & T–IS unit pricing of the equipment in each system covered by the proposal along with the price per system.

On April 9, 1985, GSA advised GTE it was releasing everything requested except for certain withheld materials, not here relevant. The letter did not withhold price data and contained no explanation or reason for releasing the price data contained in the proposal file. At the same time, GSA sent a copy of the GTE letter to AT & T–IS with a cover letter in which the only substantive paragraph read as follows:

> This is to advise you that we will release a complete copy of your proposal except those portions identified in the enclosed response to the requestor. In reaching our decision to release this information, we have carefully considered the comments in your letters. Your proposal, less the excepted items will be released to the requestor 5 working days from your receipt of this letter.

J.A. at 145.

AT & T–IS filed suit and moved for summary judgment. No basis for GSA's determination appeared in the stipulated administrative record filed with the Court. GSA opposed the motion with a counter-motion for summary judgment, which it supplemented with a declaration by Harry H. Fuchigami of its Office of Information Resources Procurement, explaining why AT & T–IS's request for withholding of price data had been rejected. The District Court, relying on the Fuchigami declaration, granted GSA's motion. *See AT & T–IS v. GSA*, 627 F.Supp. 1396 (D.D.C. 1986).[2]

**2.** GSA argues that AT & T–IS is barred from challenging the District Court's reliance on the Fuchigami declaration by its failure to object below. But AT & T–IS did expressly oppose the post-hoc character of the declaration, *see* J.A. at 3, 210 n. 16, 211 n. 17, 240; and the District Court rejected the argument, *see* 627 F.Supp. at

*Chrysler Corp. v. Brown,* 441 U.S. 281, 317–19, 99 S.Ct. 1705, 1725–27, 60 L.Ed.2d 208 (1979), holds that in a reverse-FOIA case agency action disclosing papers over objection is reviewable to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A). Such review must be based upon the "whole record," 5 U.S.C. § 706. The Supreme Court has made clear that the "whole record" consists of the administrative record compiled by the agency in advance of litigation, not any record thereafter constructed in the reviewing court. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 419–20, 91 S.Ct. 814, 825–26, 28 L.Ed.2d 136 (1971).

█ This rule applies to informal agency proceedings like those involved in this case, *see Doraiswamy v. Secretary of Labor,* 555 F.2d 832, 840 (D.C.Cir.1976), and we have repeatedly applied it to bar introduction of litigation affidavits to supplement the administrative record. *See, e.g., Walter O. Boswell Memorial Hospital v. Heckler,* 749 F.2d 788, 792–94 (D.C.Cir.1984); *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 285–86 (D.C.Cir.1981); *Rodway v. United States Department of Agriculture,* 514 F.2d 809, 816 (D.C.Cir. 1975).

█ GSA urges consideration of the Fuchigami declaration was proper under a limited exception allowing agencies to supplement the administrative record to provide "such additional explanations of the reasons for the agency decision as may prove necessary." *Pitts, supra,* 411 U.S. at 142–43, 93 S.Ct. at 1244; *see also Overton Park, supra,* 401 U.S. at 420, 91 S.Ct. at 825. But this exception may not be employed to offer post-hoc rationalizations where no rationalization exists. Although the record may be supplemented to provide, for example, background information or evidence of whether all relevant factors were examined by an agency, *see Environmen-tal Defense Fund, supra,* 657 F.2d at 285 (citing *Asarco, Inc. v. EPA,* 616 F.2d 1153, 1160 (9th Cir.1980)), we have made clear that "[t]he new material should be merely explanatory of the original record and should contain no new rationalizations." *Id.* (citing *Bunker Hill Co. v. EPA,* 572 F.2d 1286, 1292 (9th Cir.1977)). Here, GSA provided no rationalization at the agency level for its refusal to withhold the price data and is therefore precluded from initially offering one on judicial review.

In view of the inadequacy of the record, we must reverse with direction to remand to GSA for development of its reasons for deciding not to withhold. In so doing we express no view on the merits of the dispute. We desire only to emphasize the clear necessity that reverse-FOIA cases must proceed with scrupulous regard for the separate roles of the agency involved and that of the reviewing courts.

*Reversed and remanded.*

1400–01. The issue is therefore properly presented for review.