**GENERAL DYNAMICS CORP., SPACE SYSTEMS DIVISION, Plaintiff,**

v.

**U.S. DEPARTMENT OF the AIR FORCE, Defendant.**

**Civil. A. No. 88–3272 (HHG).**

United States District Court, District of Columbia.

March 24, 1992.

Melanie Ann Pustay, U.S. Dept. of Justice, Washington, DC, for the Air Force.

Thomas Christopher Papson, McKenna & Cuneo, Washington, DC, for General Dynamics Corp.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This is a "reverse" Freedom of Information Act (FOIA) case in which the plaintiff seeks to enjoin the government from disclosing certain information in a contract between it and the Air Force for medium launch vehicles and related services (the MLV II contract). The information has been requested by McDonnell Douglas Astronautics Co., an unsuccessful bidder for the MLV II contract, under FOIA, 5 U.S.C. § 552. The plaintiff protests that such information should be withheld under FOIA exemption 4 (5 U.S.C. § 552(b)(4)).

After considering plaintiff's concerns at some length, the Air Force ruled that the information is to be released. Plaintiff thereafter filed this action seeking a declaratory judgment and injunctive relief. A preliminary injunction was entered without objection from the Air Force. Each side subsequently filed a motion for summary judgment.[1] For the following reasons, judgment is entered in favor of the government.

### I

The information at issue is contained in Contract No. F04701–88–C–0042 between General Dynamics Corporation, Space Systems Division, and the Air Force for medium launch vehicles and related services, also known as the MLV II contract. The contract covers two launches for 1991, the pricing of which is not at issue here. The contract also contains an option for the government to obtain additional launches through 1997 under a "Variation in Quantity" (VIQ) pricing formula. It is the pricing of these optional launches that is primarily in dispute

---

1. Plaintiff also attempts to supplement the administrative record with affidavits by Robert N. Grunewald and R.D. Stoneburner in order to encompass arguments it apparently failed to make in written submissions to the agency. An administrative record may be supplemented by an agency if the record is so inadequate as to frustrate judicial review. *Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275, 285 (D.C.Cir. 1981). That is not the case here where the administrative record is more than sufficient.

in this case.[2] The unit prices for the optional launches are based on the total number of launch vehicles in production at the time of the option exercise. The base for the calculation of vehicles in production includes both government and commercial work. General Dynamics argues that disclosure of its total expected sales base and pricing strategies would harm it competitively.

## II

■ 5 U.S.C. § 552(b)(4) exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." FOIA exemptions are ordinarily permissive, rather than mandatory. However, the Trade Secrets Act, 18 U.S.C. § 1905, is an independent prohibition on the disclosure of information within its scope. For disclosure purposes, FOIA and the Trade Secrets Act are treated as coextensive. *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1151 (D.C.Cir.1987).

■ To establish that the contested information should be withheld under this exemption, plaintiff must show that the information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential. *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 766 (D.C.Cir. 1974). It is not disputed that the information is "commercial or financial," that it was obtained from a person, and that it is not claimed as privileged. *See, e.g.*, Plaintiff's Memorandum in Support of Cross–Motion for Summary Judgment, at 15. Accordingly, the only exemption 4 issue is whether the information in dispute is "confidential."

■ Information is confidential if disclosure would likely "cause substantial harm to the competitive position of the person from whom the information was obtained." *National Parks and Conservation Ass'n*, 498 F.2d at 770.

■ In a reverse FOIA action such as this, the standard for review is whether the agency's decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See Chrysler Corp. v. Brown*, 441 U.S. 281, 317–18, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1972).

■ The Court concludes that the government's decision—that release of this information would not cause substantial competitive harm to General Dynamics—was not arbitrary or capricious. The administrative process was lengthy and thorough. The government repeatedly solicited and welcomed the plaintiff's views on the applicability of any FOIA exemption to the information in question. *See* Defendant's Certification of Administrative Record (CAR), at Tabs C, D, G, J, L, M, O, and Q. The government concurred with the plaintiff in some respects and agreed to withhold certain information. *See* CAR at Tab H (Legal Opinion of Air Force Attorney–Advisor John Pettit); Tab N (Contracting Officer's memorandum describing redactions to be made). The Air Force Contracting Officer and the Attorney–Advisor repeatedly responded to plaintiff's arguments and provided reasons why disclosure was not legally prohibited. *See CNA Financial Corp.*, 830 F.2d at 1162–63 (upholding agency decision to release documents where "agency's decision thoroughly discusses [the submitter's] objections and presents 'a reasoned and detailed basis for its decision,'") (quoting the trial court).

The plaintiff argues the government's analysis regarding competitive harm was tainted by numerous errors, such as application of the incorrect legal standard. However, contrary to plaintiff's assertions, the government did not contend that there is a *per se* rule that pricing information on government contracts—either unit prices or option prices—must always be disclosed.[3] The government

---

2. General Dynamics breaks down the contested information into four categories: (1) the VIQ pricing formula and related option pricing information (the principal category of disputed information); (2) pricing for optional upgrade packages or "kits;" (3) payment and termination schedules; and (4) forward pricing rates for specific option tasks.

3. As the government points out, if it followed such a *per se* rule, it would not have needed months to develop and render its decision.

recognized that the likely competitive harm must be analyzed. *See* CAR at Tab L (memorandum for record notes that government informed General Dynamics that "to determine that such information was not releasable requires the Contractor to demonstrate that release of the information would be of significant benefit to GD's competitors or could otherwise cause substantial competitive harm to GD").

■ The government characterized the disclosure of such pricing information as the general rule, not a *per se* rule, and it cited substantial authority for this proposition.[4] *See Acumenics Research & Technology v. U.S. Dept. of Justice,* 843 F.2d 800 (4th Cir. 1988); *AT & T Information Systems, Inc. v. GSA,* 627 F.Supp. 1396 (D.D.C.1986), *rev'd on other grounds,* 810 F.2d 1233 (D.C.Cir. 1987); *Racal–Milgo Gov't Systems, Inc. v. Small Business Admin.,* 559 F.Supp. 4 (D.D.C.1981). Furthermore, this Court generally agrees that "[d]isclosure of prices charged the Government is a cost of doing business with the Government." *Racal–Milgo Gov't Systems, Inc.,* 559 F.Supp. at 6.

Plaintiff alleges additional errors by the government, arguing, for example, that the Air Force assumed the pricing information in dispute to be ordinary unit pricing, rather than pricing for unexercised options. Plaintiff stresses in this connection that the information at issue is not a unit price, but rather a formula for calculating a unit price at the time a particular option is exercised. Plaintiff also argues that the government wrongly assumed that only a contractor's costs, rather than prices, can be competitively sensitive. The government allegedly did not appreciate or understand that disclosure of the information at issue would provide competitors valuable insight into General Dynamics' likely prices on future government and commercial procurements.

The record shows that the government considered and understood these and other arguments and provided reasons for rejecting them. The government specifically considered General Dynamics' arguments re-

garding the differences between the release of unit prices and option prices, but it rejected those differences as not significant, in part because competitively sensitive information such as cost, overhead, or profit identifiers would not be revealed. *See* CAR at Tab E (recognizing option prices are at issue and providing specific reasons why the disclosure of such information would not provide the contractor's competitors with an unfair financial advantage); Tab H (VIQ matrix prices contain no costs, overhead, or profit identifiers); Tab M (recognizing General Dynamics' argument that "option prices reflect a pricing structure which filters into their overall commercial marketing strategy and this structure was never perceived as data that could or would be released under the FOIA process."); Tab S (discussing, *inter alia,* speculative impact of release of information on General Dynamics because future acquisitions will differ in key respects).

While the dispute over the VIQ prices is addressed in the greatest detail in the administrative record, the record shows that plaintiff's other arguments regarding option kits pricing, the payment and termination schedules, etc. were also considered and rejected for sound reasons. *See* CAR at Tabs H, S. The administrative record amply demonstrates that the government's decision that release of this information would not cause substantial harm to the plaintiff's competitive position was not arbitrary, capricious, or otherwise contrary to law. The information in dispute may be released.

---

4. In fact, the plaintiff has benefited from this rule in another matter. According to the government, the plaintiff requested and received under FOIA information, including option prices, relating to a Delta Program contract awarded to a competitor of plaintiff's. CAR at Tab P.