**CORTEZ III SERVICE CORP., INC., Plaintiff,**

v.

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, Defendant.**

Civil Action No. 96–00132.

United States District Court, District of Columbia.

March 28, 1996.

Stuart Henry Newberger, Crowell & Moring, Washington, DC, for plaintiff.

Keith V. Morgan, U.S. Attorney's Office, Washington, DC, for federal defendant.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case arises under the Freedom of Information Act ("FOIA") and comes before the Court on cross motions for summary judgment. Plaintiff is an incumbent contractor ("Cortez III"). Defendant is the National Aeronautics & Space Administration ("NASA"). In a "reverse FOIA" action, Plaintiff is seeking to prevent the Defendant from releasing certain information that was submitted in connection with a successful bid for a government contact. Specifically,

Plaintiff wishes to prevent the release of its General and Administrative expense rate ceilings ("G & A rate ceilings") to its competitors.[1]

## FACTS

### Contract Proposal

In December 1990, NASA issued a Request for Proposals ("RFP") for a cost reimbursement contract for Consolidated Logistics & Administrative Support Services II ("Class II Contract") at the NASA Lewis Research Center in Cleveland, Ohio. The RFP required the bidder to submit a detailed cost proposal. Neither the RFP nor any NASA order or regulation required the bidder to submit proposed G & A ceiling rates. (Wilson Aff., at ¶ 19). Cortez III submitted an initial proposal in response to the RFP on March 1, 1991. This proposal did not include G & A rate ceilings. (Wilson Aff. at ¶ 4).

On or about March 20, 1991, the contracting officer issued written questions to Cortez III "asking whether it would be willing to propose a cap on the G & A rates contained in its proposal" (Manthey Aff. at ¶ 3). On March 27, 1991 Cortez III submitted its Best and Final Offer to NASA. As part of that proposal, Cortez II agreed to negotiate a cap or ceiling on its G & A rates if it were the successful bidder. (Wilson Aff. at ¶ 5). After Cortez III was selected for the award, NASA and Cortez III negotiated a G & A rate ceiling which was incorporated into the contract. (Wilson Aff. at ¶ 6). NASA Awarded the contract to Cortez III on June 28, 1991. By its terms, the contract expires on September 30, 1996. As awarded, the contract contains G & A rate ceilings for both Cortez III and one of its subcontractors. (Wilson Aff. at ¶ 10).

### FOIA Requests

On March 6, 1995, NASA notified Cortez III of several FOIA requests it had received from Cortez III's competitors. On March 27, 1995, Cortez III objected to the release of information relating to the G & A rate ceilings. Cortez III argued that the information was exempt from release under the FOIA. It stated that the release of such information would cause substantial harm to its competitive position.

By letter dated August 23, 1995, NASA made an initial determination that the G & A rate ceiling information was exempt form disclosure under the FOIA, 5 U.S.C. § 552(b)(4). In that letter NASA stated:

> "Such information reveals the unique methods, procedures, and/or techniques employed by the contractor to accomplish the contract, and therefore, is considered to be confidential." (Admin.Record p. 18).

After an appeal was taken from the initial determination, Cortez III made several submissions to NASA in further support of its position that the material was exempt from disclosure under the FOIA. By letter dated January 22, 1996, NASA reversed its original position and advised Cortez III that it intended to release the information that it had previously withheld. (Admin.Record p. 24).

On January 29, 1996, Cortez III filed this action seeking to enjoin the release of the information. Plaintiff makes two arguments in support of its position that the information should not be disclosed:

1. Cortez III provided the G & A rate ceiling information to NASA on a voluntary basis and therefore, under the *Critical Mass*, test, the information is confidential and exempt from disclosure;

2. Whether or not the G & A ceiling rates were submitted on a voluntary basis, they are confidential financial information and are therefore exempt under FOIA Exemption 4.

By agreement of the parties confirmed by Order of this Court, the material in question will not be released until the matter has been decided.[2]

---

**1.** G & A expense rates include costs relating to the management, marketing. bid and proposal preparation, financial and other expenses incurred with respect to the management of the corporation. (Wilson Aff. at ¶ 3, Keevan Aff. at ¶ 17, Defendant's Motion For Summary Judgment, FN 2).

**2.** None of the entities that have made FOIA requests has chosen to appear in this matter.

## STANDARDS OF REVIEW

### Summary Judgment

■ Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Mere allegations or denials of the adverse party's pleadings are not enough to prevent issuance of summary judgment. The adverse party's response to the summary judgment motion must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.Pro. 56(e).

The Supreme Court set forth the governing standards for issuance of summary judgment in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In *Celotex*, the Supreme Court recognized the vital need for summary judgment motions to the fair and efficient functioning of the justice system:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Proc. 1....
>
> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Id.* at 327, 106 S.Ct. at 2555. (citation omitted).

■ The moving party is entitled to summary judgment where "the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex* at 323, 106 S.Ct. at 2552. Any factual assertions contained in affidavits and other evidence in support of the moving party's motion for summary judgment shall be accepted as true unless the facts are controverted by the non-moving party through affidavits or other documentary evidence. See Local Rule 108(h).

■ In resolving the summary judgment motion, all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). The inferences, however, must be reasonable, and the non-moving party can only defeat a motion for summary judgment by responding with some factual showing to create a genuine issue of material fact. *Harding v. Gray*, 9 F.3d 150, 154 (D.C.Cir.1993). The non-movant has met its burden of showing that a dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party". *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C.Cir.1987) (*per curiam*) (citing *Anderson, supra*).

### Administrative Procedures Act

■ This is a "reverse FOIA" case arising under the Administrative Procedure Act. In such a case the district courts have jurisdiction to hear complaints brought by parties claiming that an agency decision to release information adversely affects them. *See, Reliance Electric Co. v. Consumer Product Safety Comm.*, 924 F.2d 274, 277 (D.C.Cir. 1991). The Court's inquiry focuses upon whether NASA's decision to release the information was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), based upon the entire record. *AT & T Information Systems, Inc. v. GSA.*, 810 F.2d 1233, 1236 (D.C.Cir.1987).

## ANALYSIS

■ Exemption 4 under the FOIA exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential" 5 U.S.C. § 552(b)(4). In this Circuit, the

mode of analysis for determining whether or not Exemption 4 is applicable has been set forth in two cases. In *National Parks and Conservation Assn. v. Morton,* 498 F.2d 765 (D.C.Cir.1974), the Court of Appeals articulated a two-prong test for determining whether financial or commercial information submitted to the government was entitled to the protection of Exemption 4. Such information is protected if the disclosure of such information is likely to 1) impair the Government's ability to obtain necessary information in the future; or 2) cause substantial harm to the competitive position of the person from whom the information was obtained. *National Parks,* at 770.

In *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871 (D.C.Cir.1992) (*en banc*), cert. denied, 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993), the Court of Appeals refined the decision in *National Parks* by drawing a distinction between information that was required to be provided to the government and information that was voluntarily produced. Under the test set forth in *Critical Mass,* financial or commercial information provided to the government on a voluntary basis is "confidential" for the purpose of Exemption 4 if it is the kind that would customarily not be released to the public by the person from whom it was obtained. *Critical Mass,* at 879. Thus, financial information that is provided to the Government on a voluntary basis must meet a less stringent test in order to fall under Exemption 4.

It is clear from the record that the **actual** G & A rates are sensitive and confidential commercial information that are entitled to protection under Exemption 4. At issue in this case is the applicability of Exemption 4 to the G & A rate **ceilings** provided to NASA by Cortez III. As a preliminary matter, the Court must determine on the record before it whether or not the G & A rate ceilings were submitted to NASA on a voluntary basis. If the information in question was submitted voluntarily, then the *Critical Mass,* test would apply, and Plaintiff would have a lower burden to meet in seeking to invoke Exemption 4.

NASA initially held that the G & A rate ceilings were confidential and therefore covered by Exemption 4, regardless of whether they had been produced on a voluntary or involuntary basis. (Admin.Record p. 18). It subsequently reversed its original decision. On the issue of voluntary disclosure, NASA stated:

> Looking at this issues form an over-all perspective, NASA planned to award a cost-reimbursement contract under this procurement. Consequently, the solicitation required, as a condition to participating, that offerors submit a cost proposal. Submission of a cost proposal in a cost-reimbursement procurement is a mandatory condition to further consideration in the competition. While Cortez III had some discretion concerning the content, submission of a cost proposal was mandatory. Therefore, Cortez III's cost proposal was not voluntarily submitted for purposes of applying *Critical Mass.* (Admin.Record p. 22).

█ NASA states that the submission of a cost proposal, including actual G & A rates was mandatory in order to compete for the contract. From this fact it extrapolates the conclusion that the G & A rate ceilings were also a mandatory part of the cost proposal. NASA has provided no support for the assertion that the G & A rate ceilings were a mandatory part of the cost proposal. Clause 17(1)(b)(2) of the contract requires that the offeror submit cost or pricing data including:

> (2) Indirect Costs—Subdivide into as many categories or types or indirect cost (e.g., Engineering Overhead, Manufacturing Overhead, Material Burden, *G & A*, etc.) as necessary to be consistent with the offerors's cost accounting systems. * * * (emphasis added) (Admin.Record p. 330).

It is undisputed that the actual G & A rates are a mandatory component of the cost proposal. Had NASA required bidders to submit proposed G & A ceilings, it could have included that requirement in the proposal, however the proposal is silent as to G & A rate ceilings. The issue of G & A rate ceilings only came into play after Cortez III had submitted its initial proposal. At that time, the contracting officer contacted Cortez

III and asked "whether it would be willing to propose a cap on the G & A rates contained in its proposal" (Manthey Aff. at ¶ 3). At this point, it is clear that the procurement officer was asking Cortez III to provide additional information that was not required by the contract proposal document. Neither the administrative decision nor the sworn affidavits submitted by the government support the conclusion that Cortez III was required to provide G & A rate ceilings in order to continue to compete for the contract. Thus, the G & A rate ceilings were provided to NASA on a voluntary basis. Because of these facts, the appropriate test for determining the applicability of Exemption 4 is the test articulated in *Critical Mass.*

■ Plaintiff's unrefuted sworn affidavits attest to the fact that G & A rate ceilings are the type of information that is not regularly disclosed to the public. (Wilson Aff. at ¶ 7). Cortez III was free to either provide the information or to decline to do so. It chose to provide the information. Cortez III should not now be disadvantaged for voluntarily providing to NASA this additional information. Therefore, under the test set forth in *Critical Mass,* the G & A rate ceilings are entitled to the protection of Exemption 4.

■ Even under the more stringent *National Parks,* test, the information would be entitled to protection. It is clear from the number of FOIA requests received from Cortez III's competitors that the material being sought is of a sensitive commercial nature. The Government has conceded that the actual G & A rates are sensitive commercial data and are therefore not discloseable under the FOIA. The Government has chosen to focus on the semantic distinction between actual G & A rates and G & A rate ceilings. Under the facts of this case, the actual G & A rates are nearly identical to the G & A rate ceilings. For all intents and purposes they are synonymous. Thus, it is likely that the disclosure of this information will result in substantial financial harm to the Plaintiff. *See, National Parks,* at 770. Accordingly, for this additional reason, Plaintiff is entitled to assert Exemption 4 to protect its G & A ceiling rate data.

## CONCLUSION

The information regarding Plaintiff's G & A ceiling rates was provided to NASA on a voluntary basis and with the expectation of confidentiality. As such, the information is shielded from disclosure under Exemption 4 of the FOIA. The information is also entitled to protection because it is "confidential financial information" within the meaning of Exemption 4. The agency finding that such information is releasable is neither supported by the facts in the record, nor the applicable law of this Circuit. Therefore, the agency decision in this matter was not in accordance with law and must be overturned.

Plaintiff's motion for summary judgment will be granted, Defendant's cross-motion for summary judgment will be denied. An appropriate Order follows this opinion.

## ORDER

This matter comes before the Court on cross-motions for summary judgment. For the reasons stated in the Court's Memorandum Opinion of this date, it is hereby:

**ORDERED** that Plaintiff's motion for summary judgment be **GRANTED.** It is

**FURTHER ORDERED** that Defendant's motion for summary judgment be **DENIED.**