MALLINCKRODT INC., Plaintiff,

v.

Togo D. WEST, Secretary, Department of Veterans Affairs, Defendant.

No. CIV. 99–2276(ESH).

United States District Court, District of Columbia.

June 22, 2000.

Douglas B. Farquhar, Hyman, Phelps & McNamara, P.C., Washington, DC, for plaintiff.

Mark E. Nagle, Wilma Antoinette Lewis, Fred E. Haynes, U.S. Attorney's Office, Washington, DC, for defendant.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

This case arises under the Freedom of Information Act (FOIA) and comes before the Court on cross-motions for summary judgment. Plaintiff seeks to prevent the release to a competitor of certain information that was submitted in connection with a successful bid for a government contract. As explained below, the Court grants plaintiff's motion and denies defendant's motion.

## *FACTUAL BACKGROUND*

Mallinckrodt Medical, Inc. (Mallinckrodt) manufactures and distributes a variety of medical products, including radiopharmaceuticals and contrast media. By two letters dated October 8, 1997, the Department of Veterans Affairs' (VA) Heartland Veterans Health Network (VISN 15) contacted Mallinckrodt to solicit a Blanket Purchase Agreement (BPA) bid for both radiopharmaceuticals and contrast media. A.R. 0039–0041B. BPAs are adjuncts to pre-existing Federal Supply Schedule (FSS) contracts between suppliers and the government by which the government can negotiate to receive additional discounts. *See* Osterman Decl. at. para. 4. The bid solicitations were for a period of one year, with four one-year renewal options, and guaranteed that the winner would be awarded 95% of VISN's purchase of the items during the periods covered. A.R. 0039–0041B. The solicitations stated, "to be considered your offer should include any added value items, and *must include:* a. A copy of your FSS contract [and] b. [i]nformation that we can use to evaluate amount of discount offered, product & packaging criteria and delivery." *Id.* (emphasis in original).

On December 11, 1997, Mallinkcrodt submitted its "Best and Final offer" in the form of a single BPA proposal for contrast media and radiopharmaceuticals. A.R. 0038M–0038NN. In its cover letter, Mallinckrodt stated, "All data and documents submitted in this request are deemed to be proprietary and confidential, and may not be released to other parties without the express written permission of Mallinckrodt Medical, Inc." A.R. 0038N.

On January 21, 1998, VISN 15 sent a letter to Mallinckrodt accepting its propos-

al and the two parties subsequently entered into Blanket Purchase Agreement No. BPA (VISN 15)—1—98, effective February 1, 1998. A.R. 0038A–0038G. In the BPA, the VA agreed to purchase 95% of its radiopharmaceutical and contrast media products from Mallinckrodt in exchange for certain discounts and rebate and incentive programs. *Id.*

On February 20, 1998, the Chief of the Medical Administrative Service at the VA's Dwight Eisenhower Medical Center in Leavenworth, Kansas sent a letter to Mallinckrodt informing it that one of its major competitors, Nycomed, Inc., had made a request under FOIA for the BPA between Mallinckrodt and VISN 15. A.R. 0025A. The letter asked Mallinckrodt to provide any grounds for objecting to the disclosure, in particular for any arguments that the information fell under FOIA's Exemption 4. *Id.*

By letter dated March 6, 1998, Mallinckrodt responded that it did not oppose the release of the price list for the contract, but it did object to the release of "any information related to the Blanket Purchase Agreement." A.R. 0024–0025. Mallinckrodt explained that the release of the BPA information would give its competitor, Nycomed, an advantage by knowing Mallinckrodt's pricing and discount strategies. *Id.* The letter stated:

> Nycomed, Inc. is a major direct competitor of Mallinckrodt in the fields of Imaging and Nuclear Medicine. Specifically, both companies sell similar Contrast Media and Radiopharmaceutical products to both Government and Commercial end user customers. BPA No. BPA (VISN 15)—1—98 would give Nycomed insight into Mallinckrodt's pricing and discounting strategies. This information would provide Nycomed with an unfair advantage in future competitive bidding or contracting situations. A.R. 0024.

Initially, the VA agreed with Mallinckrodt that the information was privileged or confidential under Exemption 4, and in a letter to Nycomed dated March 24, 1999, the VA denied the request to disclose the information. A.R. 0021. Nycomed appealed the decision in a letter dated March 30, 1998. A.R. 0020. The VA then reversed itself, and in a letter to Mallinckrodt dated August 13, 1999, it announced its decision to disclose all of the BPA information except for Mallinckrodt's tax identification number. A.R. 0001–0002. The VA explained that the information "still simply relates to unit pricing data" and recent amendments to the Federal Acquisition Regulations "make clear that the unit prices of each award are to be disclosed to unsuccessful offerors." A.R. 0002. In a similar letter to Nycomed that was not sent because of this litigation, the VA explained that these regulations applied "regardless of the possible competitive impact" that Mallinckrodt might suffer as a result of disclosure. A.R. 0003, 0004.

Mallinckrodt made its final plea in a letter dated August 24, 1999, in which it restated its arguments against disclosure and requested reconsideration. A.R. 0000A–0000E. It then filed this action on August 26, 1999, on the day before the information was to be released, seeking a temporary restraining order and a permanent injunction. On September 13, 1999, The Honorable Henry H. Kennedy, Jr. granted a motion consolidating the preliminary injunction hearing with the final hearing on the merits.[1] Both parties have now moved for summary judgment.

### STANDARD OF REVIEW

#### Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be

---

1. This case was transferred to the under- signed on December 22, 1999.

**4**

rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party is entitled to summary judgment where the "non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Administrative Procedures Act

 In a "reverse FOIA" case, the court has jurisdiction when a party disputes an agency's decision to release information under FOIA. Since the court is charged with reviewing an informal agency decision, the case is subject to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq. See Chrysler Corp. v. Brown,* 441 U.S. 281, 317–18, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (APA review applies to reverse FOIA cases). Under the APA, the court can reverse the agency's decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). This requires that a court sustain an agency's decision if it is "based on a consideration of the relevant factors and there has been no clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

### ANALYSIS

 FOIA's Exemption 4 prohibits disclosure of "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). Although FOIA exemptions are normally permissive rather than mandatory, *see General Dynamics v. U.S. Dept. of Air Force,* 822 F.Supp. 804,

806 (D.D.C.1992), the Trade Secrets Act, 18 U.S.C. § 1905, independently prohibits the disclosure of confidential information. For disclosure purposes, FOIA and the Trade Secrets Act are treated as coextensive. *CNA Financial Corp. v. Donovan,* 830 F.2d 1132, 1151 (D.C.Cir.1987); *see also General Dynamics,* 822 F.Supp. at 806. Thus, the Trade Secrets Act affirmatively prohibits the disclosure of information covered by Exemption 4. *Id., see also McDonnell Douglas Corp. v. Widnall,* 57 F.3d 1162, 1165 (D.C.Cir.1995). As a result, a decision to disclose information that falls within Exemption 4 is contrary to the Trade Secrets Act, and should be overturned as "not in accordance with law." *See McDonnell Douglas Corp. v. NASA,* 180 F.3d 303, 306 (D.C.Cir.1999) (agency's decision to release confidential information violated the Trade Secrets Act and is therefore not in accordance with law).

The parties agree that the information at issue here does not constitute a "trade secret," but rather, that it qualifies as "commercial or financial information obtained from a person." The issue, therefore, is a limited one: is the information "privileged or confidential"?

 To determine whether the information is privileged or confidential within the meaning of Exemption 4, it is necessary to resolve first the issue of whether the information was provided to the government voluntarily or if it was required to be provided. If it was voluntarily provided, the submitter of the information has to satisfy a lower threshold to prevent disclosure. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871 (D.C.Cir.1992) (*en banc*), *cert. denied,* 507 U.S. 984, 113 S.Ct. 1579, 123 L.Ed.2d 147 (1993). Under the test set forth in *Critical Mass,* financial or commercial information provided to the government on a voluntary basis is "confidential" for purposes

of Exemption 4 if it is the kind that would customarily not be released to the public by the submitter. *Id.* at 874. If, however, the information was given involuntarily, it will not be considered confidential unless the submitter can show that disclosure will (1) impair the government's ability to obtain necessary information in the future or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. *National Parks Assn. v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974).

It is plaintiff's position that the information was voluntarily submitted to the VA, or in the alternative, even if it is assumed that it was involuntarily submitted, it would qualify under the *National Parks* test since the disclosure of the information would cause substantial competitive harm to the supplier. Defendant, on the other hand, argues that the information was involuntarily submitted because it constitutes pricing information, and therefore, *National Parks* must govern, and under this test, plaintiff has not shown substantial harm to its competitive position.[2] The resolution of which test applies is inextricably intertwined with a determination of whether the VA has correctly decided that the rebate and incentive information con-

tained in the BPA "simply relates to unit pricing data," and as such, is disclosable under federal regulations. A.R. 0002.

 While it is beyond dispute that unit pricing data is required to be submitted in order to compete for a government contract and would therefore be disclosable, it does not follow that information relating to rebates and incentives constitutes unit pricing data. On the contrary, the unit price is the amount of public funds the government must pay for goods and services. *See* Defendant's Opposition at 4 and cases cited therein. However, it is clear from a review of the plaintiff's motion and the accompanying declaration of Mark Osterman that rebates and incentive programs reveal very little, if anything, about the cost of the product to the government. In fact, with respect to most of the incentive or rebate programs, they would have absolutely no effect on the unit price, but rather, they would only add some unspecified value to the contract.

Moreover, the agency's reliance on the Federal Acquisition Regulations, 48 C.F.R. § 15.503(b)(1)(iv)-(v) and 15.506(d)(2),[3] is misplaced, since these regulations do no more than require the disclosure of information unless its disclosure would reveal

---

**2.** The government concedes that if the Court were to conclude that the *Critical Mass* test applies, the information would not be disclosable. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment at 3 (hereinafter "Defendant's Opposition").

**3.** 48 C.F.R. § 15.503(b)(1)(iv)-(v) provides in relevant part that the agency shall disclose "the items, quantities, and any stated unit prices of each owed," but, "[i]n no event shall an offeror's cost breakdown, profit, overhead rates, trade secrets, manufacturing processes and techniques, or other confidential business information be disclosed."

48 C.F.R. § 15.506(d)(2) provides that when an agency debriefs an offeror, the agen-

cy must disclose "the overall evaluated cost or price (including unit prices), and technical rating, if applicable, of the successful offeror and the debriefed offeror, and past performance information on the debriefed offeror."

Moreover, 48 C.F.R. § 15.506(e) limits the scope of the debriefing by prohibiting the release of "any information prohibited from disclosure by 24.202 or exempt from release under the Freedom of Information Act (5 U.S.C. 552) including (1) Trade secrets; (2) privileged or confidential manufacturing processes and techniques; (3) commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information; ..."

information that is exempt from release under the FOIA. The regulations do no more than codify existing law, and thus, defendant's reliance on these regulations does nothing to advance his argument.

■ Relevant case law also supports the conclusion that the information at issue cannot merely be subsumed within the concept of the total contract price. For instance, in *Cortez III Service Corp. v. NASA*, 921 F.Supp. 8 (D.D.C.1996), the court drew a distinction between G & A rates and G & A rate ceilings, recognizing that rates had to be included, but rate ceilings did not. Defendant rejects this distinction without any citation to any legal authority, and instead, he argues that "all of the information submitted in an effort to win a government contract should be viewed as having been required by the contract solicitation." Defendant's Opposition at 7. Such an argument is flatly inconsistent with the intent of *Critical Mass*, for as explained by the D.C. Circuit in *McDonnell Douglas Corp. v. NASA:*

> ... [i]t seems somewhat troubling that Justice, in 1993, instructed the agencies that they "should" treat "most" information given to the government as "required," without any serious effort analytically to distinguish voluntarily supplied information from that which is required within the meaning of *Critical Mass*.

180 F.3d at 306.

Contrary to this admonition, defendant attempts to argue here that since the BPA solicitation required the submission of pricing information, it necessarily follows that the rebates and incentives were required to be submitted. As previously discussed, this leap is not supportable, since there is no basis in the record for equating rebates and incentives with pricing information. Secondly, this argument glosses over the distinction made in the contract solicitation. The solicitations for both the radiopharmaceuticals and the contrast media instructed the bidder that "to be considered your offer should include any added value items, and *must include:* a. A copy of your FSS contract [and] b. [i]nformation that we can use to evaluate amount of discount offered, product & packaging criteria and delivery." A.R. 0039–0041B. The VA distinguished "added value items" from other information by not including them within the category of information that "must" be included. Thus, similar to the G & A ceilings in *Cortez III*, the rebates and incentives in this case may have made the bid more appealing or valuable to the government, but this information was not required to be submitted within the meaning of *Critical Mass* and it was not unit pricing data.[4]

### CONCLUSION

For the foregoing reasons, the Court concludes that the rebates and incentives are shielded from disclosure under Exemption 4 of the FOIA. The agency's contrary conclusion is overturned as arbitrary, capricious and contrary to law, for neither the facts in the record, nor the relevant law of this Circuit or the Federal Acquisi-

4. Given the Court's conclusion that this information is protected from disclosure under *Critical Mass*, it need not reach the alternative argument that the release of this information would cause substantial competitive harm to plaintiff within the meaning of *National Parks*. Nonetheless, given the facts presented in the Osterman declaration, it appears that even under the more stringent *National Parks* test, the information would be protected since its disclosure would cause competitive harm to plaintiff. *See McDonnell Douglas Corp. v. NASA*, 180 F.3d at 306 (the release of line item pricing information would cause competitive harm because it would help competitors to underbid the supplier of the information).

tions Regulations support the government's overly expansive interpretation of pricing information as including rebates and incentives or its argument that all information submitted in an effort to win a government contract must be treated as having been required by the contract solicitation.

Accordingly, plaintiff's motion for summary judgment will be granted and defendant's cross-motion for summary judgment will be denied. An appropriate Order follows this Opinion.

### ORDER

This matter comes before the Court on cross-motions for summary judgment. For the reasons stated in the Memorandum Opinion of this date, it is hereby:

**ORDERED** that plaintiff's motion for summary judgment be **GRANTED;** and it is

**FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED;** and it is

**FURTHER ORDERED** that the motion for preliminary injunction is **DENIED AS MOOT.**