United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued September 8, 1997 Decided September 30, 1997

 No. 96-5073

 IMS, P.C., 

 Appellant

 v.

 Aida Alvarez, Administrator,

 United States Small Business Administration, 

 Appellee

 Appeal from the United States District Court 

 for the District of Columbia 

 (No. 96cv00023)

 Russell J. Gaspar argued the cause for appellant, with 
whom Paralee White was on the briefs.

 Glenn P. Harris, Trial Attorney, United States Small 
Business Administration, argued the cause for appellee. Eric 
H. Holder, Jr., United States Attorney at the time the brief 
was filed, John D. Bates, R. Craig Lawrence, and Wyneva 


Johnson, Assistant United States Attorneys, were on the 
brief.

 Before: Edwards, Chief Judge, Wald and Garland, Circuit 
Judges.

 Opinion for the Court filed by Circuit Judge Wald.

 Wald, Circuit Judge: IMS, P.C. ("IMS"), a corporation 
that provides architectural and engineering services, brought 
an action in the United States District Court for the District 
of Columbia to challenge the refusal by the Small Business 
Administration ("SBA") to revise IMS's participation term in 
the SBA's section 8(a) program for socially and economically 
disadvantaged businesses. IMS's dispute with the SBA arose 
after the passage of the Business Opportunity Development 
Reform Act of 1988, Pub. L. No. 100-656, 102 Stat. 3853 
(codified as amended at 15 U.S.C. s 631 et seq. (1994)) 
("BODR Act"), which provided for revised participation terms 
for section 8(a) program participants. Pursuant to the Act, 
the SBA notified IMS, a participant in the section 8(a) 
program, that it would be given a revised program term of 
nine years from its first section 8(a) contract, which the SBA 
had determined to be a contract performed by IMS in Janu-
ary 1987. IMS objected to the new term, claiming that its 
participation term should not be calculated from the date of 
the January 1987 contract because that contract was brought 
into the section 8(a) program in violation of an agency regula-
tion precluding acceptance of a contract that was previously 
the subject of specified forms of solicitation. See 13 C.F.R. 
s 124.301(b)(8) (1987) (subsequently amended and renumber-
ed 13 C.F.R. s 124.309(a) (1997)). The SBA reviewed IMS's 
claims, concluded that the term had been correctly calculated, 
and refused IMS's request to revise it.

 The district court held that the SBA's decision to include 
the January 1987 contract in the section 8(a) program did not 
violate the agency's regulations and dismissed the suit for 
failing to state a valid claim and, in the alternative, entered 
summary judgment on behalf of the SBA. See IMS, P.C. v. 
Lader, No. 96-23 (D.D.C. Feb. 12, 1996) (unpublished bench 


opinion) ("Bench Op."). Because we find that IMS has failed 
to establish that the SBA violated 13 C.F.R. s 124.301 (1987) 
when it accepted IMS's contract with the Veterans Adminis-
tration ("VA") into the section 8(a) program, we affirm the 
district court's decision to grant the SBA's motion for sum-
mary judgment.1

 I. Background

 In December 1985, IMS was accepted into the Small Busi-
ness Administration's section 8(a) program, which provides 
"small business concerns owned and controlled by socially and 
economically disadvantaged individuals" with "contract, finan-
cial, technical, and mangement [sic] assistance." See 15 
U.S.C. s 631(f)(2) (1994) (footnote omitted). The company 
was initially granted a four-year Fixed Program Participation 
Term that was to begin on the date of the company's first 

__________
 1 The district court clearly relied on materials outside the plead-
ings in ruling on the motion to dismiss. See Bench Op. ("I don't see 
any history developed that that really is not what they meant and 
not how they practiced. That's been argued, but I don't see that in 
the administrative record. I don't see any interpretations or opin-
ions offered that that's not what it means."). Under Rule 12(b)(6) 
of the Federal Rules of Civil Procedure, the motion to dismiss must 
therefore be converted into a motion for summary judgment. See 
Fed. R. Civ. P. 12(b) ("If, on a motion asserting the defense 
numbered [12(b)](6) to dismiss for failure of the pleading to state a 
claim upon which relief can be granted, matters outside the plead-
ing are presented to and not excluded by the court, the motion shall 
be treated as one for summary judgment and disposed of as 
provided in Rule 56...."). For this reason, we will treat the 
district court's action as only a grant of summary judgment. Our 
standard of review of a grant of summary judgment under Federal 
Rule of Civil Procedure 56 is de novo. See Tao v. Freeh, 27 F.3d 
635, 638 (D.C. Cir. 1994) ("Our review of the grant of summary 
judgment is de novo, applying the same standards as the district 
court.") (citations omitted) (footnote omitted). Summary judgment 
is appropriate when all of the submissions "show that there is no 
genuine issue as to any material fact and that the moving party is 
entitled to a judgment as a matter of law." Fed. R. Civ. P. 56.


section 8(a) contract award, subject, under the rules then in 
effect, to limited extension.

 In late August 1986, the Engineering Department of the 
VA Medical Center in Batvia, New York selected IMS to 
perform a small project. IMS claims, and the SBA offers no 
evidence to disprove, that IMS was chosen to perform the 
project after the VA orally solicited several small disadvan-
taged businesses to submit proposals. The Medical Center 
was apparently unaware that IMS was a section 8(a) program 
participant when it selected the company for the project. 
Accordingly, it was not until after the solicitation and selec-
tion of IMS that the project was designated a section 8(a) 
project.

 In November 1988, Congress enacted the BODR Act, which 
modified the program term for section 8(a) program partici-
pants. The final rules implementing the changes required by 
the Act provided that program participants as of September 
1, 1988, would be given a revised program term of "the 
greater of nine years from the date of the Participant's first 
contract pursuant to section 8(a) or the Participant's Fixed 
Program Participation Term (FPPT) expiration date, includ-
ing any extension thereof, plus 18 months." 13 C.F.R. 
s 124.110(c) (1989).

 In a letter dated December 14, 1988, the SBA informed 
Iqbal Singh, the president of IMS, that the BODR Act 
provided IMS with a revised term of participation in the 
section 8(a) program of nine years from IMS's first contract 
under the program, which the SBA had determined to be 
IMS's January 1987 contract with the VA. The letter re-
quested that Mr. Singh sign and return the letter, which he 
did without objection.

 Between 1989 and 1994, IMS contacted the SBA several 
times in an effort to change its program term. IMS claimed 
then, as it does now, that the VA contract was not the proper 
starting point of IMS's section 8(a) program term because the 
contract was brought into the program only after the VA had 
engaged in a public solicitation for offers and selected IMS. 
The SBA maintained in each of its responses that it had found 


no basis for IMS's contention that the VA contract was 
inappropriately brought into the program.

 In August 1995, IMS submitted additional materials to the 
SBA in support of its continuing request to change its pro-
gram term.2 The SBA's District Counsel, Mollie Gaughan, 
reviewed the material presented by IMS and concluded that 
"[t]here is no evidence in the contract file to support the 
premise that solicitation was previously published" and, 
therefore, "the program participation date was properly es-
tablished." Memorandum from Mollie B. Gaughan, District 
Counsel, to Michael McHale, Deputy Administrator Minority 
Enterprise Development (Oct. 4, 1995). In response to Ms. 
Gaughan's memorandum, the SBA's Acting Deputy Associate 
Administrator, Michael McHale, wrote a memorandum in 
which he outlined his decision to reject IMS's request to 
extend its program term. In his memorandum, he noted: 
"The documentation provided by your office indicates that 
proper offer acceptance procedure was followed in taking the 
requirement into the 8(a) program." Memorandum from 
Michael P. McHale, Acting Deputy Associate Administrator, 
to Millie B. Gaughan, District Counsel (Oct. 31, 1995). On 
November 1, 1995, Franklin Sciortino, SBA's District Di-
rector for Buffalo, New York, wrote to Mr. Singh at IMS 
advising him that the Central Office had denied IMS's re-
quest for a new participation term expiration date. See 
Letter from Frank J. Sciortino, District Director, to Iqbal 
Singh, President, IMS, P.C. (Nov. 1, 1995).

 In January 1996, IMS filed a complaint seeking judicial 
review of the SBA's refusal to amend its section 8(a) program 
term and requesting injunctive relief to prevent the expira-
tion of its term. On February 12, 1996, the district court 
dismissed the suit for failing to state a valid claim and, in the 
alternative, entered summary judgment on behalf of the SBA. 
This appeal ensued.

__________
 2 The materials included affidavits from Mr. Singh and VA em-
ployee Janet Kline describing how the VA had conducted the 
procurement that led to the contract with IMS in 1987.


 II. Analysis

A. SBA's Interpretation of the Regulations

 IMS claims that SBA's acceptance of the 1987 VA contract 
into the section 8(a) program violated the SBA's own rules 
and regulations, and therefore IMS's term expiration dates 
based upon that contract must be set aside by this court. In 
particular, IMS alleges that the SBA's decision to accept the 
contract into the section 8(a) program was contrary to its own 
regulation precluding acceptance of a contract that was previ-
ously the subject of a public solicitation. See 13 C.F.R. 
s 124.301(b)(8) (1987). The district court rejected IMS's 
claims, noting that "the reading of 13 C.F.R. 124.301 (1987) 
and the language therein is exclusive language. That is ... 
the regulation limited public solicitations to those in the form 
of an invitation to bid, a request for proposal, or a request for 
a quotation." See Bench Op. We agree with the district 
court that IMS has failed to establish that the SBA's accep-
tance of the 1987 contract into the section 8(a) program 
violated 13 C.F.R. s 124.301 (1987).

 This court has previously noted that it is a "well-settled 
rule that an agency's failure to follow its own regulations is 
fatal to the deviant action." Mine Reclamation Corp. v. 
Federal Energy Regulatory Comm'n, 30 F.3d 1519, 1524 
(D.C. Cir. 1994) (citations omitted) (internal quotation marks 
omitted); see Vitarelli v. Seaton, 359 U.S. 535, 539-40 (1959); 
Service v. Dulles, 354 U.S. 363, 372-73 (1957); Union of 
Concerned Scientists v. Atomic Energy Comm'n, 499 F.2d 
1069, 1082 (D.C. Cir. 1974). If the SBA failed to follow its 
own regulations in designating the 1987 VA contract as a 
section 8(a) program project, this could be fatal to the SBA's 
designation of the contract as a section 8(a) project and, 
therefore, depending on the circumstances, to its decision to 
establish IMS's participation term on the basis of that con-
tract.3

__________
 3 This court rejects the SBA's contention that under 13 C.F.R. 
s 124.110(d) (1989) it did not have the statutory authority to revise 
a program term once it was set even if the contract on which the 
term was based was granted in violation of federal regulations. 
Contrary to the SBA's claim, if the designation of IMS's 1987 


 13 C.F.R. s 124.301(b)(8)(i) (1987) was promulgated as a 
regulation in late 1986. It read:

 (8) SBA will not accept for 8(a) award proposed pro-
 curements not previously in the section 8(a) program if 
 any of the following circumstances exist:

 (i) Public solicitation has already been issued for the 
 procurement as a small business set-aside in the form of 
 an Invitation for Bid (IFB), Request for Proposal (RFP) 
 or a Request for Quotation (RFQ). Providence of a 
 general intent to set aside, such as Procurement Infor-
 mation Notices (PIN's), annual procurement forecasts or 
 past procurements by set aside, is insufficient reasons 
 [sic] to preclude the procurement from 8(a) consider-
 ation.

Id. IMS contends that this regulation prohibits the SBA 
from accepting into the section 8(a) program any contract for 
which a public solicitation has been issued. The company 
claims that the SBA violated this regulation when it admitted 
IMS's 1987 contract with the VA into the section 8(a) pro-
gram because the VA had issued an oral solicitation that was 
the functional equivalent of a Request for Quotation and had 
selected IMS to perform the contract before the contract was 
accepted in the section 8(a) program. For this reason, IMS 
argues, its participation term in the section 8(a) program 
cannot be based on this contract.

 The SBA presents a more restrictive reading of the regula-
tion. Under its interpretation, which is entitled to substantial 
deference, see Lyng v. Payne, 476 U.S. 926, 939 (1986) (noting 
that it is an "established proposition that an agency's con-
struction of its own regulations is entitled to substantial 
deference") (citations omitted), the transferral of the contract 
into the 8(a) program would only be invalid if the VA had 
already issued one of three specific types of public solicita-
tion: an Invitation for Bid, Request for Proposal, or Request 
for Quotation. In this view, the fact that the VA had issued 

__________
contract with the VA as a section 8(a) contract had violated 13 
C.F.R. s 124.301(b)(8) (1987), the SBA could have revised IMS's 
program term.


an oral solicitation that was arguably the functional equiva-
lent of a Request for Quotation is irrelevant. The contract 
was eligible for inclusion in the SBA's section 8(a) program 
because the VA had not issued one of the three specified 
forms of public solicitation.

 We find the SBA's interpretation of 13 C.F.R. s 124.301 
(1987) to be reasonable. Indeed, it is more reasonable than 
that offered by IMS.4 Although the portion of the regula-
tions that applies to the SBA does not itself define the terms 
"Invitation for Bid," "Request for Proposal," or "Request for 
Quotation," these terms are used to refer almost exclusively 
to written documents throughout the federal regulations that 
govern contracting by negotiation under the federal acquisi-
tion regulations system. See, e.g., 48 C.F.R. s 15.402 (1996); 
48 C.F.R. s 15.406 (1996); 48 C.F.R. s 15.407 (1996); 48 
C.F.R. s 15.410 (1996). Tellingly, the portion of the federal 
regulations that governs acquisitions by the Department of 
Veterans Affairs does so as well. See, e.g., 48 C.F.R. 
s 852.210-75 (1996) (requiring that a particular written provi-
sion be included in all invitations for bids, requests for 
proposals, and requests for quotations issued for items that 
are required to conform to technical industry standards); 48 
C.F.R. s 814.201 (1996) (requiring that all invitations for bids 
be serially numbered at time of issue); see also 38 C.F.R. 
s 43.36(g)(2) (1996) (referring to requests for proposals and 
invitations for bids as "procurement documents"). All of this 
indicates that these terms in the SBA regulations have clear 

__________
 4 Because we find that the SBA's reading of 13 C.F.R. s 124.301 
(1987) is more plausible than that offered by IMS, we need not 
consider whether the manner in which the SBA articulated its 
interpretation should affect the degree of deference it warrants. 
See Huffman v. Western Nuclear Inc., 486 U.S. 663, 674 n.9 (1988); 
cf. Securities Indus. Ass'n v. Board of Governors of the Fed. 
Reserve Sys., 468 U.S. 137, 143 (1984) ("post hoc rationalizations by 
counsel for agency action are entitled to little deference") (citations 
omitted); American Horse Protection Ass'n, Inc. v. Lyng, 812 F.2d 
1, 6 (D.C. Cir. 1987) ("We are adjured to take a critical view of an 
agency's 'post hoc rationalization' ....") (citations omitted).


and specific meanings that do not encompass oral solicitations 
of the type allegedly used by the VA in its 1987 procurement.

 Because the SBA's more restrictive interpretation of 13 
C.F.R. s 124.301 (1987) is consistent with the rest of the 
federal regulations and with the plain meaning of the regula-
tion, we find it entirely reasonable. Under this interpretation 
of the regulations, even if the VA issued an oral solicitation to 
IMS and other small businesses in mid-1986, the SBA did not 
violate its own regulations when it accepted the contract into 
the section 8(a) program in early 1987. IMS has therefore 
failed to establish that its section 8(a) program term is 
incorrect.

B. The Arbitrary and Capricious Claim

 In its motion for summary judgment, IMS contended that 
the SBA's failure to correct IMS's program term was arbi-
trary, capricious, and contrary to law. The company claimed 
that the SBA had not examined the relevant data or articulat-
ed a satisfactory explanation for its action. It further alleged 
that there was no rational connection between the facts and 
the choice SBA made. In response, in its motion to dismiss, 
or in the alternative, cross motion for summary judgment, the 
SBA claimed that its refusal to change IMS's term in the 
section 8(a) program was based upon a rational evaluation of 
the facts and therefore was not arbitrary, capricious, or 
contrary to law. It noted that the SBA had notified IMS of 
its revised program term in 1986 and that IMS had acknowl-
edged that decision without objection. The SBA further 
claimed that when IMS raised objections to its program term 
several years later, SBA officials carefully reviewed IMS's 
factual allegations but concluded that they were inconsistent 
with specific documents in the SBA's files.5 The district 

__________
 5 The SBA's memorandum of points and authorities in support of 
its motion cited three separate reviews of IMS's request by SBA 
officials. One review was conducted in September 1995 by Betty 
Perno, the Assistant Director for the 8(a) program in the Buffalo 
SBA office. In a memorandum to the District Counsel in that 
office, she concluded that the documents in the SBA's file showed 
that the SBA's contract with IMS had been awarded under the 8(a) 


court concluded that the SBA's decision not to revise IMS's 
program term was not arbitrary and capricious because "their 
record contains substantial evidence that the SBA fairly 
considered the IMS allegations and concluded they did not 
warrant a change in the program date and that affects the 
use of qualifications to continue in this program." See Bench 
Op.

 Because we affirm the district court's ruling that the SBA 
did not violate 13 C.F.R. s 124.301 (1987) when it admitted 
IMS's 1987 contract with the VA into the section 8(a) pro-
gram, IMS's claim that the SBA's actions were arbitrary and 
capricious necessarily fails since there is no conclusion that 
the SBA could have reached other than that the expiration 
date of IMS's section 8(a) program term was correct. The 

__________
program and had not been subject to earlier non-8(a) solicitation. 
She also noted that IMS's claims were supported only by affidavits 
and that IMS had provided no other documentation to support its 
claims. A second review was conducted in October 1995 by Mollie 
Gaughan, the Buffalo District Counsel. In her memorandum to 
Michael McHale, the Deputy Administrator for the 8(a) program in 
SBA's Central Office, she indicated that she had found no support 
for the statements contained in the affidavits submitted by IMS. 
Rather, she observed that the affidavits were "in direct conflict" 
with documents contained in the files. Finally, the SBA Central 
Office reviewed IMS's request and concluded that the SBA's award 
of the 1987 contract to IMS was consistent with SBA procedures. 
See Defendant's Memorandum of Points and Authorities in Support 
of Its Motion to Dismiss or, in the Alternative, Cross Motion for 
Summary Judgment and Opposition to Plaintiff's Motion for Sum-
mary Judgment, at 18-26. It should be noted that Ms. Gaughan's 
memorandum mentions that the SBA's file did not include a state-
ment from the procuring agency that the proposed procurement 
had not been offered previously by public solicitation under a small 
business set aside, as was required by the regulations. However, 
the memo also indicated that such a statement had been made by an 
SBA employee and concluded that it was a matter of agency 
discretion whether the omission of the procuring agency's statement 
was fatal. See Memorandum from Mollie B. Gaughan, District 
Counsel, to Michael McHale, Deputy Administrator Minority Enter-
prise Development (Oct. 4, 1995), at 3.


agency's conclusion that there is "no evidence in the file to 
support the premise that the solicitation was previously pub-
lished" 6 is entirely consistent with the ground on which we 
have based our ruling, although admittedly, at the time it 
made its decision, the agency did not point to the specific 
publication requirements of 13 C.F.R. s 124.301 (1987) as it 
later did in its motion to dismiss, or in the alternative, for 
summary judgment.

C. The Supplemental Affidavits

 IMS submitted four affidavits to the district court in sup-
port of its Request for a Temporary Restraining Order and 
its Motion for Summary Judgment.7 IMS claimed that the 
affidavits, while not contained in the agency record, merely 
elaborated on information that was in the record and should 
therefore be permitted. The district court granted SBA's 
motion to strike the affidavits. We affirm the district court's 
decision.

 It is a widely accepted principle of administrative law that 
the courts base their review of an agency's actions on the 
materials that were before the agency at the time its decision 
was made. See Puerto Rico Higher Educ. Assistance Corp. 
v. Riley, 10 F.3d 847, 850-51 (D.C. Cir. 1993) ("We base our 
review of the Department's actions on the materials that were 
before the Department at the time its decision was made.") 
(citation omitted); Walter O. Boswell Mem'l Hosp. v. Heckler, 
749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an 
agency's action fairly, it should have before it neither more 
nor less information than did the agency when it made its 
decision."). As the Supreme Court noted in 1985, "The task 

__________
 6 See Memorandum from Mollie B. Gaughan, District Counsel, to 
Michael McHale, Deputy Administrator Minority Enterprise Devel-
opment (Oct. 4, 1995), at 3.

 7 The affidavits were: (1) Affidavit of Iqbal M. Singh (Jan. 5, 
1996) (with attachments); (2) Supplemental Affidavit of Iqbal M. 
Singh (Jan. 17, 1996) (with attachments); (3) Affidavit of Janet 
Kline (with attachment) (Jan. 17, 1996); (4) Statement of Albert 
Iamicelli, a VA employee familiar with the 1987 contract (Jan. 16, 
1996).


of the reviewing court is to apply the appropriate APA 
standard of review, 5 U.S.C. s 706, to the agency decision 
based on the record the agency presents to the reviewing 
court." Florida Power & Light Co. v. Lorion, 470 U.S. 729, 
743-44 (1985) (citing Citizens to Preserve Overton Park v. 
Volpe, 401 U.S. 402 (1971)); see also Camp v. Pitts, 411 U.S. 
138, 142 (1973) (per curiam) ("In applying [the arbitrary and 
capricious] standard, the focal point for judicial review should 
be the administrative record already in existence, not some 
new record made initially in the reviewing court."). It is not 
necessary that the agency hold a formal hearing in compiling 
its record, for "[t]he APA specifically contemplates judicial 
review on the basis of the agency record compiled in the 
course of informal agency action in which a hearing has not 
occurred." Florida Power, 470 U.S. at 744.

 Both parties agree that the affidavits submitted by IMS 
were not available to the SBA at the time it made its decision 
regarding IMS's participation term. IMS claims, however, 
that the district court should have considered the affidavits as 
part of the administrative record because they merely elabo-
rated on details already included in the record. In addition, 
IMS argues that "even if the affidavits constituted extraneous 
evidence, they still should have been considered by the Court 
under various exceptions which permit supplementation of the 
administrative record." Appellant's Brief at 23.

 We find no legal support for IMS's assertions. Even if 
IMS were correct in its claim that information that elaborates 
on details already in the record could be considered by the 
court, the affidavits in question could not be considered 
because they provide significant new information about the 
circumstances surrounding the 1987 contract that is not avail-
able in the administrative record. Moreover, the affidavits do 
not appear to fall within any of the accepted exceptions to the 
principle that the court cannot consider information that falls 
outside the agency record. As the district court concluded, 
IMS has not demonstrated that the agency failed to examine 
all relevant factors or to adequately explain its grounds for 
decision, or that the agency acted in bad faith or engaged in 
improper behavior in reaching its decision. This is not a case 


where the agency failed "to explain administrative action [so] 
as to frustrate effective judicial review." Pitts, 411 U.S. at 
142-43. Nor has IMS made the "strong showing of bad faith 
or improper behavior" required to justify supplementing the 
record. Citizens to Preserve Overton Park v. Volpe, 401 U.S. 
402, 420 (1971).

 The affidavits contain information that should have been 
submitted to the agency before this dispute reached the 
courts. To allow the affidavits to be considered now would be 
to permit ex post supplementation of the record, which is not 
consistent with the prevailing standards of agency review. 
See AT&T Info. Sys. v. General Serv. Admin., 810 F.2d 1233, 
1236 (D.C. Cir. 1987) ("we have repeatedly applied [the rule 
against supplementing the agency record] to bar introduction 
of litigation affidavits to supplement the administrative rec-
ord") (citations omitted); Walter O. Boswell Mem'l Hosp., 749 
F.2d at 793 (noting that the court had struck portions of an 
amicus brief that discussed affidavits not available to the 
agency at the time of its decision). As this court held in 
Walter O. Boswell Memorial Hospital v. Heckler, if the 
parties to a case "wish to contest the merits of the case by 
referring or submitting to the District Court any material 
that does not appear in the ... administrative record, they 
may do so only by joint stipulation." Id. at 794.

 III. Conclusion

 For the foregoing reasons, we hold that IMS has failed to 
establish that the SBA's acceptance of IMS's 1987 contract 
with the VA into the section 8(a) program violated federal 
regulations. We also hold that the district court properly 
excluded the supplemental affidavits that the appellant filed 
in support of its claims on the basis that they were not part of 
the administrative record. The district court's decision 
granting the SBA's motion for summary judgment is there-
fore

 Affirmed.