**McDONNELL DOUGLAS CORPORATION,**
Appellant,

v.

**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION,**
Appellee.

No. 98–5251.

United States Court of Appeals, District of Columbia Circuit.

Argued May 6, 1999.

Decided June 25, 1999.

Peter L. Wellington argued the cause for appellant. With him on the briefs was Jerald S. Howe, Jr.

Michael J. Ryan, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, United States Attorney, and R. Craig Lawrence, Assistant United States Attorney.

Before: SILBERMAN, WILLIAMS, and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

McDonnell Douglas Corporation appeals from the district court's grant of summary judgment in favor of the National Aeronautics and Space Administration's (NASA) decision to release certain contract line item prices under the Freedom of Information Act. We reverse.

## I.

In this reverse FOIA action, McDonnell Douglas seeks to prevent NASA from releasing satellite launch pricing information contained in a contract between the two, under which the company has agreed to provide medium-light expendable launch vehicle services. In NASA's solicitation of bids for the contract, the agency requested the submission of proposed prices for certain contract line items, including prices for several launch missions and various other launch-related services. McDonnell Douglas responded with a bid based on its Delta launch vehicle. No other contractors submitted proposals for the contract, and after further negotiations on prices and terms—including an agreement to eliminate a clause stating that pricing information in the contract was considered to be in the public domain—NASA awarded the contract to McDonnell Douglas.

Several months later, "FOIA Group, Inc." submitted a FOIA request to NASA, seeking a copy of the contract. NASA notified McDonnell Douglas of the request, and of the company's opportunity to file objections within five days, pursuant to its regulations. *See* 14 C.F.R. § 1206.610(b)-(d) (1999). The company objected to the release of certain information in the contract—including launch service prices, cost figures for specific launch service components and overhead, labor rates, and profit figures and percentages—on the ground that it was protected under FOIA Exemption 4 as confidential commercial or financial information.

Exemption 4 provides that an agency is not obliged to disclose information consisting of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4) (1994). Whether such information is protected turns in part on whether it was provided to the government voluntarily or under compulsion: if the financial or commercial information was disclosed to the government voluntarily, it will be considered confidential for purposes of Exemption 4 if it is the kind of information "that would customarily not be released to the public by the person from whom it was obtained." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 879

(D.C.Cir.1992) (en banc). If the information was required, however, it will be considered confidential only if disclosure would be likely either (1) to impair the government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained. *See id.* at 878–80 (reaffirming test of *National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974), but confining it to cases of compelled disclosure). Although if the information falls within Exemption 4, the agency is not *precluded* from disclosing it under FOIA (an exemption simply means that the government is not *compelled* to disclose it), *see Chrysler Corp. v. Brown,* 441 U.S. 281, 290–95, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *CNA Fin. Corp. v. Donovan,* 830 F.2d 1132, 1133 n. 1 (D.C.Cir.1987), we have held that the Trade Secrets Act, 18 U.S.C. § 1905 (1994), "is at least coextensive with that of Exemption 4 of FOIA," *id.* at 1151. Accordingly, when a person can show that information falls within Exemption 4, then the government is precluded from releasing it under the Trade Secrets Act. *See McDonnell Douglas Corp. v. Widnall,* 57 F.3d 1162, 1164 (D.C.Cir.1995).

McDonnell Douglas claimed that since its decision to enter into the contract was voluntary, providing bid information as part of that contract was also voluntary. Therefore, *Critical Mass* governs, and Exemption 4 applies because bid information is not the kind of information that it would customarily release to the public. Alternatively, the company argued that, even if it were obliged to provide the information to NASA, the information fell within Exemption 4 under *National Parks* because disclosure would likely impair the government's ability to obtain such information in the future and would likely cause substantial harm to McDonnell Douglas' competitive position. Since the information falls under Exemption 4—either under *Critical Mass* or *National Parks*—the company

asserted that the Trade Secrets Act precludes the agency from releasing it.

NASA rejected these arguments and issued a Notice of Intent to release the contract's line item pricing information. NASA determined that the company was obliged to provide the information in the contract, therefore, *National Parks* and not *Critical Mass* was the controlling standard. Although NASA determined that the disclosure of certain information—labor rates, overhead factors, profit information, and launch service cost figures—was likely to cause substantial competitive harm to McDonnell Douglas and would not be released, NASA regarded the line item pricing information differently; it rejected the contention that competitive harm was likely, reasoning that release of pricing information would not allow competitors to underbid McDonnell Douglas, nor would it allow the company's commercial customers to negotiate more effectively and thereby "ratchet down" McDonnell Douglas' prices.

The company filed this reverse FOIA suit, alleging that NASA's decision to release the line item pricing information was unlawful under the APA. On cross motions for summary judgment, the district court granted summary judgment for the agency. *See McDonnell Douglas Corp. v. NASA,* 981 F.Supp. 12, 13 (D.D.C.1997).

## II.

The company not only argues that *Critical Mass* applies—that its submission of bidding information is part and parcel of the voluntary act of submitting a bid—but it claims that the administration, through the Justice Department, is unlawfully seeking to nullify our recent *Critical Mass* decision by taking an unduly restrictive interpretation of "voluntary" submissions, and by instructing agencies to operate as if *Critical Mass* had never been decided and only *National Parks* governed Exemption 4 cases. If the government will not make a good faith effort to distinguish the submission of Exemption 4–type information that is voluntary from that which is re-

quired, it is argued we should use the *Critical Mass* test alone to determine whether information is confidential under Exemption 4 and the Trade Secrets Act. Accordingly, appellant goes so far as to ask us (presumably through another *en banc* rehearing) to flatly overrule *National Parks.*

Although it seems somewhat troubling that Justice, in 1993, instructed the agencies that they "should" treat "most" information given to the government as "required," without any serious effort analytically to distinguish voluntarily supplied information from that which is required within the meaning of *Critical Mass,* we do not think it is even necessary in this case to decide whether appellant's bidding information was voluntarily submitted—still less whether we should, as a full court, reconsider overruling *National Parks.* That is so because assuming *arguendo* that *National Parks* applies—that the bidding information was not voluntarily submitted—we believe the disputed line item price information is confidential commercial or financial information under the *National Parks* test.

It is undisputed that the total price of the contract may be made public. But the government does not claim that it or NASA has any independent legal authority to release line item pricing information. It does point out that NASA has a long and consistent practice of doing so. That is of no consequence. If commercial or financial information is likely to cause substantial competitive harm to the person who supplied it, that is the end of the matter, for the disclosure would violate the Trade Secrets Act. To be sure, we noted in a previous case that "it appeared passing strange" that the prices charged to the government for specific goods could be confidential, *McDonnell Douglas v. Widnall,* 57 F.3d at 1167, but we did not address the competitive harm issue in that case.

Appellant claimed the release of line item pricing information would cause it competitive harm for two reasons: it would permit its commercial customers to bargain down ("ratchet down") its prices more effectively, and it would help its domestic and international competitors to underbid it (the company claimed that disclosure of the line item pricing data would allow competitors to calculate its actual costs with a high degree of precision).

NASA's response to appellant's concern that its customers' bargaining leverage will be enhanced is rather mystifying. The agency said that publication of line item prices is the "price of doing business" with the government, which either assumes the conclusion, or else assumes a legal duty or authority on the government to publicize these prices, which, as we have noted, the government does not assert. NASA did recognize that if disclosure enabled *competitors* to underbid McDonnell Douglas that would constitute competitive harm. *See Gulf & Western Indus., Inc. v. United States,* 615 F.2d 527, 530 (D.C.Cir.1979). But the agency "reasoned" that underbidding due to the disclosure would not occur because price is only one of the many factors used by the government in awarding contracts. That response seems too silly to do other than to state it, and pass on.

Perhaps the most convoluted—even astonishing—reason given by NASA for claiming appellant would not be likely to suffer competitive harm is that "it is [McDonnell Douglas'] competitors who have suffered competitive harm in *failing* to learn the prices for [McDonnell Douglas'] domestic launch vehicles" since their line item prices have become public. (Emphasis added.)[1] As should be obvious, by so stating, NASA implicitly recognized that it would be to the competitor's advan-

---

1. NASA also argued, inconsistently, that disclosure would not be harmful to the company's competitive position because competitors can underbid McDonnell Douglas now with information already available.

tage to receive McDonnell Douglas' line item price information. Of course, it follows that appellant will be competitively harmed by that disclosure. That appellant's competitors have not attempted to stop the disclosure of their line item prices is of no significance in determining the issue before us.[2]

\* \* \*

NASA's decision could either be seen as not in accordance with law because releasing the information would be contrary to the Trade Secrets Act, or as arbitrary and capricious for its illogical application of the competitive harm test. Under either rubric, the decision must be set aside. Both of the reasons McDonnell Douglas advanced for claiming its line item prices were confidential commercial or financial information are indisputable. McDonnell Douglas has shown—as much as anyone can show before the event—that it is likely to suffer substantial competitive harm. And under present law, whatever may be the desirable policy course, appellant has every right to insist that its line item prices be withheld as confidential.

2. We need not address McDonnell Douglas' alternative argument that disclosure of its pricing information would also satisfy the impairment prong of *National Parks.* Though we do note that one circuit has held that a submitter cannot even raise the government's interests on behalf of the agency in a reverse FOIA case. *See Hercules, Inc. v. Marsh,* 839 F.2d 1027, 1030 (4th Cir.1988).