**MCI WORLDCOM, INC., Plaintiff,**

v.

**GENERAL SERVICES ADMINISTRATION, Defendant.**

**Sprint Communications Company, L.P. Plaintiff,**

v.

**General Services Administration, Defendant.**

**Nos. 00–914(GK), 00–915(GK).**

United States District Court, District of Columbia.

Sept. 7, 2001.

or hostile work environment in their complaint. *See Sparrow,* 216 F.3d at 1111; *fn. 1*

*supra.*

Thomas Craig Wheeler, Piper Marbury Rudnick & Wolfe, LLP, Washington, DC, for Plaintiff.

Lydia K. Griggsby, Beverly M. Russell, U.S. Attorney's Office, Washington, DC, for Defendant.

### MEMORANDUM OPINION

KESSLER, District Judge.

These matters are before the Court on the Motions for Summary Judgment of Defendant General Services Administration ("GSA"), and upon the Cross Motions for Summary Judgment of Sprint Communications Company, L.P. ("Sprint"), and of MCI Worldcom, Inc. ("MCI"). These cases are consolidated for the purposes of this Memorandum Opinion and Order. Upon consideration of the motions, oppositions, replies, and the entire record herein, for the reasons stated below, the Court **denies** Defendant's Motions for Summary Judgment and **grants** Plaintiffs' Motions for Summary Judgment.

### I. BACKGROUND

Plaintiffs, MCI and Sprint, bring this "reverse" Freedom of Information Act ("FOIA") action to enjoin disclosure by Defendant GSA of pricing information that was submitted in connection with Plaintiffs' contracts to provide telecommunications services to the Government. Plaintiffs contend that disclosure would violate FOIA, Exemption 4, 5 U.S.C. § 552(b)(4), the Trade Secrets Act, 18 U.S.C. § 1905, and applicable federal regulations.

### A. The FTS2001 Contracts and B–Tables

The GSA, through its Federal Technology Service ("FTS"), provides government agencies and other government related entities throughout the world with long distance telecommunications services. GSA currently provides these services by means of two multi-year, long-distance contracts known as "FTS2001 Contracts." GSA awarded one FTS 2001 Contract to Sprint on December 18, 1998, and the other to MCI on January 11, 1999.

Among other things, the FTS2001 Contracts require that Plaintiffs provide various types of long distance services to the Government for a base term of four years. GSA has the option to renew the Contracts for up to four additional years thereafter, making the total life of the FTS2001 Contracts eight years. At the time of the writing of parties' briefs, Plaintiffs were performing "Contract Year 2."

In order to obtain the FTS2001 Contracts, Plaintiffs were required to submit detailed proposals covering a broad array of telecommunications services to be provided to the Government, including services for voice, data and internet. Plaintiffs also submitted detailed pricing schedules known as "B–Tables." The B–Tables are complex matrices in computer data base format that contain detailed line-item pricing information. In particular, the B–Tables contain a "break down" of the price of every call, transmission or service into its component parts.[1] There are separate B–Tables for each of the eight years of the FTS2001 Contracts, and together the B–Tables total tens of thousands of pages of pricing data for all services and features to be provided to the Government under the FTS2001 Contracts.

### B. GSA's Decision to Release FTS2001 Contract B–Tables

On April 11, 2000, when Plaintiffs were performing Year 2 of the FTS2001 Contracts, GSA announced that it was adopting a new policy regarding the disclosure of pricing data. GSA informed Plaintiffs that, pursuant to this policy, it would now publicly disclose all "contract unit prices" contained in the FTS2001 Contracts. In particular, GSA indicated that it would disclose Plaintiffs' B–Tables for the remaining years, or "future-years," of the FTS2001 Contracts (*i.e.*, Years 3–8).

GSA acknowledged that its decision to release all pricing data for *future* years differed from its previous long-standing policy and practice of disclosing only *current*-year prices.[2] GSA explained that its

---

1. B–Tables specify three basic "price components" for each call or transmission: originating access charges, network transport charges, and termination access charges. These components are, in turn, broken down into "price elements" according to numerous variables, such as geographic location, the time of day that a call is placed, the type of access and transport involved, the type of user-to network interface employed for data transmissions, and any optional special features. *See* Sprint's Counterstatement of Undisputed Material Facts ¶¶ 21–23; MCI's Statement of Material Facts Not in Dispute ¶¶ 7–10.

2. For example, the FTS2001 Contract, Clause H.12, "Protection of Proposal and Contract Information," provided that only current year contract prices would be disclosed. It states in relevant part:

   In accordance with Federal Acquisition Regulation (FAR) Part 15.413, the Government will take the necessary and usual steps to maintain the confidentiality of information submitted by the offeror prior to the award of the contract and contract modifications. Although Section 7.10 advises the contractor of Freedom of Information Act redaction the contractor is advised that the Government will make all *current year* contract prices publicly available.

new policy was adopted in response to the 1997 revisions to the government procurement regulations known as the Federal Acquisition Regulations ("FAR"), 48 C.F.R. § 15.500 *et seq.* ("1997 FAR rewrite").[3] In particular, GSA relied upon two FAR regulations concerning disclosure of "unit prices" to unsuccessful offerors, namely FAR §§ 15.503(b)(1) and 15.506(d)(2). 48 C.F.R. §§ 15.503(b)(1) and 15.506(d)(2). GSA concluded that these two regulations as revised mandated disclosure of the pricing information found in Plaintiffs' B–Tables for the remaining years of the FTS2001 Contracts.[4]

On April 18, 2000, GSA received a FOIA request from Qwest Communications Company ("Qwest"), seeking, among other things, all "unit pricing" information submitted by Plaintiffs in connection with the FTS 2001 Contracts. On April 27, 2000, Plaintiffs filed this action seeking to enjoin disclosure of this information to Qwest for FTS2001 Contract Years 3–8. On May 5, 2000, parties entered into a stipulation whereby GSA agreed not to release any of the contract pricing information at issue in this litigation.

## II. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Plaintiffs' challenge to GSA's decision to disclose their B–Tables arises under the Administrative Procedure Act ("APA"). The APA permits a person "affected or aggrieved by agency action" to seek "judicial review thereof." 5 U.S.C. § 702. If upon review of the administrative record, the court determines that the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," then the court "shall … hold unlawful and set aside" that agency action. 5 U.S.C. § 706.

While an agency's interpretation of regulations is normally entitled to considerable deference, *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court will not grant such deference in this case. The FAR is not written or prepared by GSA, but rather is a joint product of several agencies.[5] Accordingly, only minimal deference is due.

---

Administrative Record ("AR") at Tab 1, H–12 (emphasis added).

**3.** The FAR are government procurement regulations that have governed issuance of the type of contracts awarded Plaintiffs since 1983.

**4.** FAR § 15.503(b)(1), which governs postaward notices to unsuccessful offerors, was revised to include the following language: "items, quantities and any stated unit prices of each award shall be made publicly available, upon request." 48 C.F.R. § 15.503(b)(1). FAR § 15.506(d)(2), which specifies the information to be disclosed in postaward debriefings of unsuccessful offerors, was revised to require that the "overall evaluated cost or price (including unit prices)" be included in the information provided at post award government debriefings. A more detailed discussion of FAR §§ 15.503(b)(1) and 15.506(d)(2) and their amendments is provided in Section III.A. *infra.*

**5.** The FAR is prepared by two multi-agency bodies, namely the Defense Acquisition Regulations Council and the Civilian Agency Acquisition Council. These councils comprise members from thirteen different executive agencies, including GSA. *See* Sprint's Mot. Summ. J. at 21–22.

*See e.g., Caiola v. Carroll,* 851 F.2d 395, 399 (D.C.Cir.1988) (deference to agency interpretation inappropriate where regulation written and promulgated by several agencies); *Novicki v. Cook,* 946 F.2d 938, 941 (D.C.Cir.1991) (same).

## III. ANALYSIS

MCI and Sprint challenge GSA's April 11, 2000, decision to disclose the pricing information found in Plaintiffs' B–Tables for FTS2001 Contract Years 3–8. As discussed below, the Court finds that GSA's decision is arbitrary and capricious because: (1) it is contrary to §§ FAR 15.503 and 15.506, the Trade Secrets Act, and FOIA Exemption 4; (2) violates GSA's own FOIA regulations; and (3) represents a departure from GSA precedent without reasoned explanation.

### A. GSA Acted Arbitrarily and Capriciously Because FAR §§ 15.503 and 15.506, FOIA Exemption 4, and the Trade Secrets Act Prohibit Disclosure of Plaintiffs' B–Tables.

GSA's principal argument is that FAR §§ 15.503(b)(1) and 15.506 require that Plaintiffs' B–Tables be publicly disclosed. Section 15.503(b)(1), which concerns postaward notices to unsuccessful offerors of Government contracts, provides:

(b) Postaward Notices. (1) within 3 days after the date of contract award, the contracting officer shall provide written notification to each offeror whose proposal was in the competitive range but was not selected for award. The notice shall include...

(iv) The items, quantities and any stated *unit prices* of each award. If the number or other factors makes listing any stated *unit prices* impracticable at that time, only the total contract price need be furnished in the notice. However,

the items, quantities, and any stated *unit prices of each award shall be made publicly available, upon request;* ...

48 C.F.R. 15.503(b)(iv-v) (emphasis added). Section 15.506, which specifies information to be disclosed in postaward debriefings of offerors states:

(d) At a minimum, the debriefing information shall include -

(2) The overall evaluated cost or price (including *unit prices* ), and technical rating, if applicable, of the successful offeror and the debriefed offeror.

48 C.F.R. 15.506(d)(2) (emphasis added).

Relying exclusively upon the foregoing language, GSA interpreted the FAR to require disclosure of Plaintiffs' B–Tables. Specifically, GSA reasoned that: (1) the B–Tables contain "unit price" information within the meaning of FAR §§ 15.503 and 15.506 and (2) FAR §§ 15.503 and 15.506 require public disclosure of all "unit price" information. As discussed below, GSA has erred on both grounds.

### 1. Plaintiffs' B–Tables Do Not Contain Unit Price Information.

█ Plaintiffs dispute that the B–Tables constitute "unit prices" within the meaning of the FAR. Plaintiffs maintain that because the B–Tables include detailed cost breakdowns and involve millions of "pricing elements" and "pricing components," they are not "unit prices" and therefore not subject to disclosure under the FAR.

There is no standard definition of "unit price." The FAR does not provide any definition of "unit price," and case law definitions are far from illuminating. *See Acumenics Research & Technology v. U.S. Dep't of Justice,* 843 F.2d 800, 802 n. 1 (4th Cir.1988) ("an amount of payment for a defined unit of product of any given contract item"); *U.S. for Use and Benefit of Sanford v. Continental Cas. Co.,* 293

F.Supp. 816, 822 (N.D.Miss.1968) ("price quoted in terms of so much per agreed or standard unit or product or service").

GSA urges a definition of unit price that is "the amount of public funds the Government pays for its goods and services." *See* Def.'s Opp'n to Sprint's Mot. for Summ. J. at 4–5 (relying on *Mallinckrodt v. West,* 140 F.Supp.2d 1, 7 (D.D.C.2000)). Even under GSA's definition, it is clear that Plaintiffs' B–Tables do not constitute unit price information.

First, Plaintiffs' B–Tables simply do not set forth the price for the specific "good or service" of a call or transmission (*e.g.*, 3.8 cents per minute for a switched voice long-distance call). Instead, the B–Tables are complex matrices of figures in computer database format that specify the millions of pricing elements and pricing components that make up the individual calls or transmissions sold to the Government. These pricing elements and components are not separately purchased, ordered or billed to the government. *See* Sprint's Reply, Ex. 1 at 3 (Supplemental Declaration of Richard Fernandez). Indeed, the information contained in the B–Tables more closely resembles "cost breakdowns," which are specifically prohibited from disclosure by the very FAR provision relied upon by GSA. *See* FAR 15.503(b)(1)(v) ("the debriefing shall not reveal any information ... including ... *cost breakdowns,* profit, indirect cost rates, and similar information...") (emphasis added).

Second, in another case involving nearly identical pricing information, GSA argued and prevailed on the theory that Sprint's B–Table information did *not* constitute "unit prices." *See e.g., Cohen, Dunn &*

*Sinclair, P.C. v. General Services Administration,* 1992 WL 1288023 (E.D.Va.1992) (B–Tables for Sprint's predecessor FTS2000 Contract are not "unit price" information) (Ex. C to Sprint's Mot. for Summ. J.). In that case, GSA took the position that the B–Table figures bear little relationship to unit price information, in part because of the level of detail involved and in part because the figures do not correspond to discrete items for purchase. *See* MCI's Reply at 12 (quoting from GSA's July 24, 1992 Motion for Summary Judgment, filed in *Cohen, Dunn & Sinclair, supra* ). Thus, GSA's current position that the B–Table pricing data for the FTS2001 Contract is "unit price" information is contrary to its prior position, and GSA has offered no rationale for its about face.[6] The Court sees no basis for treating the pricing data at issue in this case differently from the treatment accorded it by the District Court in *Cohen.*

Third, the overwhelming evidence in the administrative record establishes that the B–Tables contain "pricing elements" and "pricing components," but not "unit prices." For example, GSA's written solicitation for proposals for the FTS2001 Contract ("FTS2001 Solicitation") regularly refers to the information in the B–Tables as "price elements," and "pricing components," not as "unit prices." *See e.g.,* Sprint's Reply at 3–4 (quoting from the A.R. Tab 1 at B–1, B–3, B–6, B–8, B–11–13). Furthermore, GSA points to nothing in the administrative record that suggests that the B–Tables contain "unit prices," as opposed to "pricing components" or "pricing elements." In fact, GSA failed to make any findings as to whether Plaintiffs'

---

**6.** GSA argues that *Cohen* can be distinguished from the case at bar because the FAR was revised subsequent to the District Court's decision in *Cohen.* However, as explained in Section III.A.2 *infra,* the revisions did not authorize a change in disclosure policy, but merely codified the law concerning disclosure of contract prices that existed during that time. Therefore, the FAR revisions are of no consequence.

B–Tables contain "unit price" information within the meaning of the FAR before deciding to disclose the B–Tables.

In light of the foregoing, the Court concludes that Plaintiffs' B–Tables for Years 3–8 do not contain "unit price" information for purposes of FAR §§ 15.503 and 15.506.

### 2. The FAR Prohibits Disclosure Because the B–Tables Constitute Confidential Information Under FOIA Exemption 4 and the Trade Secrets Act.

Even assuming *arguendo* that the B–Tables do contain "unit price" information, no reasonable reading of FAR §§ 15.503 and 15.506 would permit their disclosure.

### a. The FAR Prohibits Disclosure of Confidential Information.

In arguing for disclosure, GSA maintains that the amended FAR permits disclosure of unit pricing regardless of its confidential nature. GSA's reading contravenes both the express language of the FAR and the underlying authorizing statute.

Specifically, GSA focuses exclusively on those portions of FAR §§ 15.503 and 15.506 that require that "unit price" information be disclosed. GSA ignores the fact that both FAR provisions also expressly prohibit the release of information that is confidential, trade secret, or otherwise exempt under FOIA Exemption 4. *See* 48 C.F.R. § 15.503(b)(iv-v)(b)(v) ("In no event

shall an offeror's cost breakdown, profit, overhead rates, trade secrets, manufacturing processes and techniques, or other confidential business information be disclosed to any other offeror"); 48 C.F.R. § 15.506 ("the debriefing shall not reveal any information ... exempt from release under the Freedom of Information Act, 5 U.S.C. § 552, including (1) trade secrets;...and ... (3) commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information...").

Furthermore, the underlying statute authorizing the FAR, namely the Federal Property and Administrative Services Act, 41 U.S.C. § 253b *et seq.*, as amended by the Federal Acquisition Streamlining Act ("FASA"), 41 U.S.C. 253(b)(e)(3), specifically *prohibits* agencies from disclosing information that is subject to exemption under FOIA, including confidential and trade secret information falling within Exemption 4.[7] The FAR may not be interpreted in a way that contravenes this statutory prohibition on disclosure. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (regulations that are inconsistent with a statute are not in "accordance with law" for purposes of the Administrative Procedure Act); *Hamlet v. U.S.*, 63 F.3d 1097 (Fed.Cir.1995) (regulations or interpretations thereof that contravene a statute are invalid).

Thus, the unmistakable meaning of FAR §§ 15.503 and 15.506 is that unit

---

7. Section 253b(e)(3) provides that: "[agency] debriefing ... may not disclose any information that is exempt from disclosure under section 552(b) of Title 5." Congress' specific intent to prohibit disclosure of confidential commercial information within the scope of FOIA Exemption 4 was made clear by the Joint Conference report that accompanied passage of 41 U.S.C. 253(b)(e):

The conferees intend that information not anticipated to be released under this provi-

sion includes information relating to trade secrets; and commercial and financial information that is privileged or confidential, including cost breakdowns, profit, indirect cost rates, and similar information. Information concerning such matters is protected under the Federal Acquisition Regulation.

H. Conf. Rep. No. 103–712, 103rd Cong., 2d Sess. 183 (1994), reprinted in 1994 USCCAN 2607, 2613 (1994).

price information may be disclosed, but only insofar as it does not consist of trade secrets, confidential business information or is otherwise exempt from disclosure under the FOIA, Exemption 4. *See e.g., Mallinckrodt Inc. v. West,* 140 F.Supp.2d 1, 7 (D.D.C.2000) ("[the regulations] do no more than require the disclosure of [unit price] information unless its disclosure would reveal information that is exempt under the FOIA.") (Ex. B to Sprint's Mot. for Summ J.; Attachment A to MCI's Mot. for Summ. J.). Contrary to GSA's interpretation, the FAR does not give GSA *carte blanche* to disclose unit price information regardless of its confidentiality.

Therefore, to determine whether GSA acted reasonably in deciding to disclose Plaintiffs' B–Tables depends on whether the information at issue is exempt under FOIA as confidential or trade secret. If the information is confidential, then GSA's decision must be set aside as arbitrary and capricious. The Court turns its attention to that inquiry below.

### b. Plaintiffs' B–Tables are Confidential.

FOIA Exemption 4 provides that a federal agency may withhold information if it constitutes "trade secrets and commercial or financial information obtained from a person, and is privileged or confidential." Information is "confidential" for purposes of FOIA Exemption 4 if its release would cause "substantial harm" to the competitive position of Plaintiffs. *National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974). As explained below, the Court concludes that Plaintiffs' B–Tables contain confidential information falling within FOIA Exemption 4 and therefore is protected from disclosure under the Trade Secrets Act. *See e.g., McDonnell Douglas Corp. v. NASA,* 180 F.3d 303, 305 (D.C.Cir.1999) (if information falls within Exemption 4, the government is precluded from releasing it under the Trade Secrets Act).

First and foremost, this Circuit has held that line-item pricing information similar to that at issue here is exactly the type of information that constitutes "confidential commercial or financial information," and is not disclosable in response to a FOIA request. *McDonnell Douglas,* 180 F.3d at 306. Specifically, the Circuit reasoned that disclosure of detailed pricing data, including unit pricing, submitted in anticipation of being awarded a federal contract would result in "substantial competitive harm" because it would permit underbidding by competitors and encourage non-governmental customers to "ratchet-down" prices. *Id.* The Circuit concluded that: "If commercial or financial information is likely to cause substantial competitive harm to the person who supplied it, that is the end of the matter, for the disclosure would violate the Trade Secrets Act." *Id.*

Recognizing that this Circuit has directly spoken on the issue of the confidential nature of Plaintiffs' pricing data, GSA attempts to distinguish *McDonnell Douglas.* Specifically, GSA argues that FAR §§ 15.503 and 15.506 were revised and implemented subsequent to the Circuit's decision and that the revisions constituted a significant change in the disclosure requirements not in effect at the time of the Circuit's decision.

However, the 1997 FAR rewrite did no more than "codify existing law" at the time of the Circuit's decision. *See Mallinckrodt Inc. v. West, supra* ("The Agency's reliance on [§§ 15.503 and 15.506] is misplaced, since these regulations do no more than require the disclosure of information unless its disclosure would reveal information that is exempt from release under the FOIA. These regulations do no more than codify existing law."). Contrary to GSA's

reading, the revised regulations do not permit GSA to disclose "unit price" information regardless of its confidential nature. As explained above, any such reading is contrary to the express language of the FAR and its authorizing statute, FASA, which explicitly prohibits disclosure of confidential information.[8] Therefore, the fact that the FAR revisions may have been implemented following decision by the Circuit in *McDonnell Douglas* is of no consequence.

Second, in a case involving pricing information nearly identical to that involved in the instant case, Sprint's B–Tables were found to be confidential information not disclosable under FOIA Exemption 4. *See Cohen, Dunn & Sinclair, P.C., supra,* Sprint's Mot. for Summ. J., Ex. C, Findings of Facts 31–35 (disclosure of Sprint's B–Tables would cause substantial competitive harm, and they are therefore protected from disclosure under FOIA Exemption 4).

Finally, Plaintiffs have set forth detailed facts establishing that their B–Tables are "confidential information" within the meaning of FOIA Exemption 4 and that disclosure would result in substantial competitive harm.[9] Among other things, Plaintiffs show that disclosure would: (1) provide competitors with detailed pricing information that would permit underbidding for government contracts; and (2) allow commercial customers to "ratchet down" prices once they knew that governmental customers, such as GSA, were receiving more favorable rates. *Id.* These are precisely the injuries that led this Circuit to declare that line item pricing was confidential information and not disclosable. *See McDonnell Douglas,* 180 F.3d at 306. Moreover, Defendant does not dispute any of Plaintiffs' facts showing substantial competitive harm and has not pointed to anything in the administrative record that establishes that the information is not confidential.[10]

---

8. The following changes were made to the regulations as part of the 1997 FAR rewrite: (1) addition of language that "unit prices...shall be made publicly available" in § 15.503; and (2) inclusion of the term "unit price" in the type of costs that must be disclosed during the postaward debriefing of unsuccessful offerors as specified by § 15.506. The 1997 FAR rewrite left unchanged the requirement (contained in FAR §§ 15.503, 15.506 and the authorizing statute, FASA, 41 U.S.C. 253(b)(e)(3)) that if information could not be released under FOIA Exemption 4 it also could not be disclosed under the FAR. *See* note 7 *supra.* Therefore, contrary to GSA's position, the 1997 FAR rewrite did not alter the long-established rule, in effect at the time of *McDonnell Douglas,* that unit prices may only be released as long as they do not reveal confidential business information.

9. For example, Sprint maintains that the B–Tables correspond closely to Sprint's actual cost of providing services and reflect Sprint's best projections concerning future trends in costs over an eight-year period. *See* Sprint's Counter–Statement of Undisputed Material

Facts ¶¶ 27–30. Furthermore, Sprint argues that disclosure would provide insight into the areas in which Sprint's network is developing and the areas that are competitively strong or weak. *See* Sprint's Mot. for Summ. J. at 20.

Similarly, MCI maintains that if MCI's pricing information is released, its competitors would be able to determine the company's pricing strategies, including factors such as (i) when the company expects new technologies and features to become available, (ii) where the company has favorable pricing arrangements with local carriers and other suppliers, and where the company might be subject to challenge from a competitor, and (iii) where the company plans to increase its "points of presence" (closest point of entry on the network). *See* Pl. MCI's Statement of Material Facts Not in Dispute ¶ 52.

10. GSA's only attempt to dispute these facts is a general statement in its opposition that: "plaintiffs' FTS2001 pricing data does not reflect or reveal any information recognized to constitute confidential business information." *See* Def.'s Opp'n to MCI's Mot. for

In view of the foregoing, the Court concludes that Plaintiffs' B–Tables contain confidential information, protected from disclosure by the Trade Secrets Act and FOIA Exemption 4. Accordingly, GSA's decision to disclose the B–Tables contravenes FAR §§ 15.503 and 15.506 because it disregards those provisions that prohibit release of trade secrets and confidential information protected by FOIA Exemption 4.

### B. GSA Acted Arbitrarily and Capriciously in Failing to Follow its Own FOIA Regulations

■ GSA's decision to release Plaintiffs' B–Tables was also made in response to a FOIA request by Qwest and in anticipation of similar FOIA requests. However, FAR §§ 15.503 and 15.506 concern information to be disclosed to unsuccessful offerors for government contracts. They are not applicable to FOIA requests. Consequently, GSA must follow specific FOIA procedures when it receives a request for commercial information that may be confidential. 41 C.F.R. § 105–60.405 (1999). Among other things, GSA must notify a submitter of information that a FOIA request has been made and "invite an opinion whether disclosure will or will not cause substantial competitive harm." 41 C.F.R. § 105–60.405(d).

Plaintiffs assert that GSA failed to follow any of the FOIA procedures required before deciding to release Plaintiffs' pricing data to Qwest, and GSA does not dispute this assertion. As a result, Plaintiffs were not provided the opportunity to submit any comments as to how disclosure of the FTS2001 pricing data contained in the B–Tables would cause substantial competi-

tive harm or why they should otherwise remain confidential. The administrative record is therefore devoid of any such findings.

Accordingly, the Court concludes that GSA's decision to disclose the B–Table information in response to a FOIA request without adhering to any of its own FOIA regulations is arbitrary and capricious.

### C. GSA Acted Arbitrarily and Capriciously in Departing from Agency Precedent Without Reasoned Explanation

■ As a final matter, the Court concludes that GSA acted arbitrarily and capriciously because its decision to disclose Plaintiffs' B–Tables containing future-year pricing data constitutes an unexplained departure from its former policy of disclosing only current contract year prices.

It is well-established that where an agency departs from established precedent without a reasoned explanation, its decision will be vacated as arbitrary and capricious. *Pontchartrain Broadcasting Co. v. FCC*, 15 F.3d 183, 185 (D.C.Cir.1994); *Graphic Communications Int'l Union, Local 554 v. Salem–Gravure*, 843 F.2d 1490, 1493 (D.C.Cir.1988).

GSA's former policy of disclosing only current contract year prices had been in effect for at least twelve years before GSA decided to disclose future year pricing. GSA argued that its new disclosure policy was mandated by the 1997 FAR re-write, which was completed on September 30, 1997. However, GSA waited until April 11, 2000, two-and-a-half years after the 1997 FAR re-write, to announce its decision to disclose all future year pricing data.

Summ. J. at 8; Def.'s Opp'n to Sprint's Mot. for Summ. J. at 8. This conclusory statement, without more, is not sufficient to put any facts asserted by Plaintiffs into dispute. Indeed,

upon review of the administrative record, it appears that GSA never made any findings as to whether the B–Tables constitute confidential business information.

This delay is especially significant given that the FTS2001 Contracts, awarded to Plaintiffs in December 1998 (subsequent to the 1997 FAR rewrite) provided that only *current* year prices would be disclosed.

GSA provided no explanation of why it waited two-and-a-half years after the 1997 rewrite to reverse its long standing policy protecting future year pricing, particularly when it had assured Plaintiffs in their FTS2001 Contracts, *after* the 1997 rewrite was well in place, that only current year pricing would be released. Accordingly, given GSA's failure to explain its reversal, the Court concludes that its decision to disclose Plaintiffs' B–Tables was arbitrary and capricious.

## IV. CONCLUSION

For all the foregoing reasons, the Court finds that GSA's decision to disclose the pricing data contained in Plaintiffs' B–Tables for FTS2001 Contract Years 3–8 is arbitrary and capricious because it violates applicable statutes, regulations and case law. The Court therefore **grants** Plaintiffs' Motions for Summary Judgment, and **denies** Defendant's Motions for Summary Judgment. An Order will issue with this Opinion.

### ORDER

These matters are before the Court on the Motions for Summary Judgment of Defendant General Services Administration ("GSA") [00–914, # 12] [00–915, # 10] and upon the Cross Motions for Summary Judgment of Sprint Communications Company, L.P. ("Sprint") [00–915, ##18,19], and of MCI Worldcom, Inc. ("MCI") [00–914, # 26]. Upon considerations of the motions, oppositions, replies, and the entire record herein, for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED**, that Defendant GSA's Motions for Summary Judgment are **denied**; it is further

**ORDERED**, that Plaintiff MCI's Motion for Summary Judgment is **granted**; it is further

**ORDERED**, that Plaintiff Sprint's Motion for Summary Judgment is **granted**; it is further

**ORDERED**, that these cases are **dismissed**.