# IN THE SUPREME COURT OF TEXAS

No. 12-1007

THE BOEING COMPANY AND THE GREATER KELLY
DEVELOPMENT AUTHORITY N/K/A THE PORT AUTHORITY OF SAN
ANTONIO, PETITIONERS,

v.

KEN PAXTON, ATTORNEY GENERAL OF TEXAS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

JUSTICE BOYD, dissenting.

Like the Court, I conclude that persons who are not governmental bodies may assert section 552.104 of the Texas Public Information Act as an exception to mandatory disclosure of information in which they have a privacy or property interest, but I would hold that the Boeing Company has not conclusively established that the exception applies to the information at issue in this case. Essentially for the reasons expressed in the court of appeals' concurring opinion, *see* 412 S.W.3d 1, 18 (Pemberton, J., concurring), I respectfully dissent.

## A.    Protection of Private Interests

The Texas Public Information Act requires governmental bodies to make all "public information" available to the public, subject to specified exceptions. *See* TEX. GOV'T CODE §§ 552.021, .101–.154. Section 552.104 excepts from this requirement any "information that, if released, would give advantage to a competitor or bidder." *Id.* § 552.104(a). Texas

Attorneys General have long construed this section as protecting only the interests of governmental bodies and not those of private parties. *See, e.g.*, Tex. Att'y Gen. ORD–592 (1991) (stating that predecessor to section 552.104 was "designed to protect the interests of governmental bodies and not the interests of private parties submitting information to the government"). Section 552.104, however, contains no such limiting language. *See* TEX. GOV'T CODE § 552.104. To the contrary, section 552.305 expressly confirms that section 552.104 protects "a person's privacy or property interests," *id.* § 552.305(a), and authorizes such a person, "or any other person," to assert "the person's reasons why the information should be withheld" from disclosure, *id.* § 552.305(b). In light of the Act's plain and unambiguous language, I agree with the Court that private persons may assert section 552.104 to protect their information against disclosure.

I agree with the Attorney General that these sections do not make such information "confidential," and section 552.104 is (to use the Attorney General's terminology) a "discretionary," rather than "mandatory," exception. I thus agree with the Attorney General that a governmental body may voluntarily disclose information that section 552.104 excepts from required disclosure (unless the information is otherwise made "confidential under law," *see id.* § 552.007) without giving any notice to the person who may have a property interest in the information, *see id.* § 552.305(d). And if the governmental body does not timely request an Attorney General decision as section 552.301 requires for withholding information, the information must be released unless there is a "compelling reason" to withhold it. *Id.* §§ 552.301–.302.

I also agree with the Attorney General that this is an odd result. It is strange that the Act would provide private persons an exception to protect their information and yet allow

a governmental body that possesses the information to voluntarily release it without giving the person notice and an opportunity to oppose its disclosure. But "[w]e cannot ignore a statute's unambiguous language unless its meaning is so unreasonable that it 'would lead to absurd results,'" *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 65 (Tex. 2014) (Boyd, J., dissenting) (quoting *Combs v. Health Care Servs. Corp.*, 401 S.W.3d 623, 629 (Tex. 2013)), and "odd" and "strange" fall short of "absurd." Because section 552.305(a) unambiguously confirms that section 552.104 protects private persons' interests, and the result, though strange, is not absurd, I agree with the Court that private companies like Boeing can assert section 552.104 as an exception to disclosure.

## B. Boeing's information

But on this record, I do not agree with the Court's application of section 552.104, or that Boeing has conclusively established that the exception applies to the information at issue here. The information, which relates to amounts Boeing agreed to pay to the Port of San Antonio in connection with its lease of 1.3 million square feet of space at the old Kelly Air Force Base, relates to some of Boeing's overhead expenses and specifically includes (1) the numbers used to calculate Boeing's rental rates, (2) Boeing's share of common maintenance costs, (3) the insurance coverage Boeing is required to provide, (4) the percentage used to calculate Boeing's penalty for early termination of the lease, and (5) the caps on incentives that Boeing would receive for meeting goals for contracting with small minority-owned and women-owned businesses.

Boeing asserts that the release of this information "would give advantage to a competitor or bidder." TEX. GOV'T CODE § 552.104(a). Specifically, Boeing asserts that, with this information, companies that compete with Boeing to obtain federal contracts

3

could determine Boeing's lease costs, which make up a part of its overhead, which is a factor Boeing uses to determine the prices it charges the government for its maintenance services. Armed with this information, Boeing contends, a competitor could "entic[e] another landlord to offer a lower lease rental," *ante* at ___, which would allow the competitor to offer services to the federal government at lower rates.

I would conclude that Boeing's evidence is too hypothetical and speculative to establish that the release of its lease information "*would* give advantage to a competitor or bidder." TEX. GOV'T CODE § 552.104(a) (emphasis added). We must liberally construe the Public Information Act to implement "the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees." TEX. GOV'T CODE § 552.001(a). We are directed to liberally construe the Act "in favor of granting a request for information." *Id.* § 552.001(b). The necessary corollary is that we must narrowly construe the Act's exceptions to disclosure. In light of these unambiguous instructions, I would conclude that a party relying on section 552.104 must at least establish the existence of a specific competitor with whom the party is currently or will soon be engaged in a particular competition, and how the information would, in fact, give the competitor an advantage in that particular competition. In short, the party must prove that the release of the information "*would* give advantage to a competitor," not merely that it "could."

The Court criticizes the court of appeals for "speculat[ing] . . . that no harm would actually occur" if the information is released. *Ante* at ___. But the court of appeals need not have "speculated" whether harm would occur to reach its conclusion because Boeing

bears the burden of proving that harm in fact would occur if the information were released. *See City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 364 (Tex. 2000) (holding that party resisting disclosure had "burden to prove that the [information] is not subject to the Act"). Here, the evidence establishes, and the trial court found, that the lease at issue has been fully executed since 1998, continues until 2018, and is not currently or imminently subject to any competitive bidding process. Boeing has not identified any particular federal contract for which it is currently or will soon be competing or any competitor against whom it is or will be competing for such a contract. Nor has Boeing shown any actual specific advantage that any competitor would receive by obtaining the information. To the contrary, as the Court notes, *ante* at ___, the evidence establishes that Boeing's space at Kelly is unique and different than any other space in the country, so Boeing's costs to lease the Kelly space would have at best questionable value as a comparison to some other company's costs to lease a different space at another location—the only kind of competition Boeing asserts might someday occur.

The Court's reasons for finding otherwise are unconvincing. Evidence that "competition among aerospace firms is unlike other competitive business ventures," *ante* at ___, may be relevant, but it is not sufficient. The fact that Boeing is "concern[ed]" that a competitor could use the information to "reverse engineer" and "undercut" Boeing's bid, *ante* at ___, is likewise insufficient, particularly in the absence of any evidence of a current or imminent competitive bidding process. Indeed, evidence that "this has already occurred" when a competitor in Louisiana "underbid Boeing by about one percent and now has the contract for one heavy-lift aircraft that Boeing formerly serviced at Kelly," *ante* at ___, undermines Boeing's contention, since that result occurred even though that competitor

did not have access to the information at issue. And the fact that the information could give advantage to "competitors of San Antonio and the Port," *ante* at ___, is unrelated to Boeing's argument that the information could give advantage to Boeing's competitors. Notably, neither the City nor the Port sought to protect the information on that or any other basis.

Nor is the Court correct in suggesting that "[t]he D.C. Circuit has rejected three such requests in the last sixteen years." *Ante* at ___ (citing *Canadian Commercial Corp. v. Dep't of the Air Force*, 514 F.3d 37, 38–39 (D.C. Cir. 2008); *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1185 (D.C. Cir. 2004); *McDonnell Douglas Corp. v. Nat'l Aeronautics & Space Admin.*, 180 F.3d 303, 304 (D.C. Cir. 1999); *Gulf & W. Indus., Inc. v. United States*, 615 F.2d 527 (D.C. Cir. 1979)). These cases all involved information that is different, both in quality and in quantity, including the specific line-item prices that the companies charged the federal government for the companies' services and the companies' profit rates and percentages and related information, combined with overhead costs like labor rates and costs of materials and services. *Canadian Commercial*, 514 F.3d at 39–40 (addressing "[c]onstituent or line-item pricing information in a government contract"); *McDonnell Douglas*, 375 F.3d at 1190-91 (addressing "option year prices," the "costs of materials and services [the company] procures from other vendors," and "hourly labor rates" charged to the government for "work not required under the contract"); *McDonnell Douglas*, 180 F.3d at 304 (addressing "line-item pricing information," including "[satellite] launch service prices, cost figures for specific launch service components and overhead, labor rates, and profit figures and percentages"); *Gulf & W. Indus.*, 615 F.2d at 529-30 (addressing information including the company's "profit

6

rate, actual loss data, general and administrative expense rates, projected scrap rates and learning curve data," including "actual costs for units produced," "actual scrap rates," "break-even point calculations" and "actual cost data").

More importantly, these companies relied on (and thus the D.C. Circuit construed and applied) a different exception in a different statute: exemption 4 of the federal Freedom of Information Act, which protects information that qualifies as "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).[1] The D.C. Circuit's construction and applications of the federal statute do not control this Court's construction of the Texas Public Information Act, which uses different language and identifies different purposes. Most notably, "[u]nlike the FOIA, our Act contains a strong statement of public policy favoring public access to governmental information and a statutory mandate to construe the Act to implement that policy and to construe it in favor of granting a request for information." *City of Garland*, 22 S.W.3d at 364. At best, Boeing's evidence in this case established only that the release of information regarding its costs to lease the Kelly facility "could" give advantage to a competitor, not that it "would" do so. In light of the Texas statute's language and its instruction that we must construe it liberally in favor of granting a request for information, "could" is simply not enough.

Finally, as the Court notes, Boeing asserts "that it takes special care to safeguard" its "rental rates." *Ante* at ___. The evidence, however, established that Boeing made no effort to require or ensure that the Port did not disclose the information. Free from any contractual or other obligation to keep the information secret, the Port has already disclosed

---

[1] FOIA's exemption 4 is analogous to section 552.110 of the Texas Public Information Act, not section 552.104.

much of the information to the media and the public, including the range of rents that Boeing is expected to pay under the contract and the total amounts that Boeing has in fact paid to the Port each prior year. I agree with the court of appeals that the evidence did not conclusively establish that the information constitutes Boeing's trade secrets and would also conclude that the prior releases of this information undercuts any competitive advantage the remaining information "would" provide, even if Boeing were engaged in any particular competition to which the information could be relevant.

In summary, I agree (1) with the Court that Boeing may assert section 552.104 as an exception to mandatory release of its lease information, (2) with the concurring justice in the court of appeals that Boeing has not conclusively established that the release "would give advantage to a competitor or bidder," and (3) with the court of appeals that Boeing did not establish that the information constitutes Boeing's trade secrets. Because I would therefore affirm the court of appeals' judgment, I respectfully dissent.

_____
Jeffrey S. Boyd
Justice

Opinion delivered:  June 19, 2015